COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Kelsey and Senior Judge Overton
Argued at Chesapeake, Virginia


JOEL DULAY SINGSON

                                                               OPINION BY
v.        Record No. 0646-04-1              JUDGE ROBERT J. HUMPHREYS
                                                          NOVEMBER 8, 2005
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                         Frederick B. Lowe, Judge[1]

            Gregory R. Nevins (John L. Squires; Lambda Legal Defense and
            Education Fund, Inc.; Dan Miller & Associates, on briefs), for
            appellant.

            William E. Thro, State Solicitor General (Judith Williams Jagdmann,
            Attorney General; Matthew M. Cobb, Associate State Solicitor
            General; Ronald N. Regnery, Associate State Solicitor General, on
            brief), for appellee.


        Appellant Joel Dulay Singson ("Singson") appeals his conviction, following a conditional

guilty plea, for solicitation to commit oral sodomy, in violation of Code §§ 18.2-29 (criminal

solicitation) and 18.2-361 (crimes against nature).  Based on the holding of the United States

Supreme Court in Lawrence v. Texas, 539 U.S. 558 (2003), Singson contends that Code

§ 18.2-361 is facially unconstitutional because it prohibits private acts of consensual sodomy, in

violation of the Due Process Clause of the Fourteenth Amendment.  Thus, Singson argues that he

cannot be convicted for attempting, through solicitation, to violate that statute.  In the alternative,

Singson contends that Code § 18.2-361 is unconstitutionally overbroad because it, in conjunction

_____
        [1] Although Judge Frederick B. Lowe entered the final order in this case, the record
reflects that Judge Edward W. Hanson, Jr., made the ruling being challenged on appeal.

with Code § 18.2-29, chills constitutionally protected speech, also arguing that the sentence imposed by the trial court constitutes cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution. For the reasons that follow, we hold that Singson lacks standing to facially challenge the constitutionality of Code § 18.2-361 pursuant to the Due Process Clause of the Fourteenth Amendment. We also hold that Code § 18.2-361 is not unconstitutionally overbroad under the First Amendment and that Singson is procedurally barred from arguing that the sentence imposed by the trial court constitutes cruel and unusual punishment. Accordingly, we affirm his conviction for solicitation to commit oral sodomy.

## I. BACKGROUND

The relevant facts are not in dispute. At approximately 4:00 p.m. on March 20, 2003, Singson walked into a men's restroom located in a department store. The restroom is freely accessible to members of the public, including children. Once in the restroom, Singson entered the handicapped bathroom stall and remained in that stall for approximately thirty minutes. Singson then left the handicap bathroom stall and approached a stall occupied by an undercover police officer. Singson "stopped in front of the stall, leaned forward," and "peered into [the] stall through the crack in the stall door." The undercover police officer, who was in "a state of undress," asked Singson "What's up?" and "What are you looking for?" Singson replied, "Cock." The officer then asked "What do you want to do," and Singson replied, "I want to suck cock." The undercover officer asked if Singson wanted to suck his penis, and Singson responded, "Yes." When the officer asked, "Do you want to do it in here," Singson nodded towards the handicap stall. The officer then asked if Singson wanted to suck his penis in the handicap stall, and Singson responded, "Yes."

A grand jury indicted Singson for "command[ing], entreat[ing] or otherwise attempt[ing] to persuade another to commit a felony other than murder," specifically, "Crimes Against

Nature," in violation of Code §§ 18.2-29 and 18.2-361. Singson moved to dismiss the indictment, arguing that Code § 18.2-361 "is overbroad and vague, [and] violates the defendant's rights to Due Process under the United States Constitution as outlined in the recent U.S. Supreme Court opinion in [Lawrence v. Texas, 539 U.S. 558 (2003)]."

The trial court overruled the motion to dismiss, reasoning that Lawrence did not apply because "the restrooms within [s]tores open to the public are not within the zone of privacy as contemplated by the United States Supreme Court." The court further noted that it could not "imagine too much more [of a] public place than a restroom in a shopping mall." Singson entered a conditional guilty plea, and the trial court, noting Singson's extensive criminal history of prior, similar behavior, imposed a sentence of three years in prison. The court suspended two and one-half years of Singson's sentence, resulting in a total active sentence of six months.

## II. ANALYSIS

On appeal, Singson raises three assignments of error. First, he contends that his conviction should be reversed because, in light of the Supreme Court's decision in Lawrence, Code § 18.2-361 is facially unconstitutional. Second, Singson argues, in the alternative, that his conviction should be reversed because Code § 18.2-361 is unconstitutionally overbroad. Third, Singson contends that the sentence imposed by the trial court constitutes cruel and unusual punishment, in violation of the Eighth Amendment. For the reasons that follow, we find no merit in any of these contentions. Accordingly, we affirm.

### A. Whether Code § 18.2-361 is Facially Unconstitutional Because it Encompasses Conduct Protected Under the Due Process Clause of the Fourteenth Amendment

Citing the United States Supreme Court's decision in Lawrence v. Texas, 539 U.S. 558 (2003), Singson initially contends that Code § 18.2-361 is facially unconstitutional because it encompasses private acts of consensual sodomy, thus offending the Due Process Clause of the Fourteenth Amendment. However, because Singson's conduct occurred in a public place—not a

private location—we hold that he lacks standing to challenge the constitutionality of Code § 18.2-361 on this ground. Accordingly, we do not reach the issue of whether, applying Lawrence, Code § 18.2-361 is facially unconstitutional under the Fourteenth Amendment because it encompasses private—as well as public—acts of consensual sodomy. And, because application of Code § 18.2-361 under the circumstances of this case neither implicates nor violates Singson's constitutional right to due process of law, we conclude that this assignment of error has no merit.

1.  Whether Public Sexual Conduct is Encompassed by Code § 18.2-361

Code § 18.2-361 provides, in relevant part, as follows:

> If any person carnally knows in any manner . . . any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge, he or she shall be guilty of a Class 6 felony . . . .

Code § 18.2-361(A). As we have noted, "[t]he term 'carnal knowledge' has been construed to include 'any sexual bodily connection, not simply sexual intercourse.'" Santillo v. Commonwealth, 30 Va. App. 470, 483, 517 S.E.2d 733, 740 (1999) (quoting Shull v. Commonwealth, 16 Va. App. 667, 669, 431 S.E.2d 924, 925 (1993), aff'd, 247 Va. 161, 440 S.E.2d 133 (1994)). Because "[c]arnal knowedge 'with the mouth' is another term for cunnilingus, and carnal knowledge 'by the mouth' includes fellatio," id. (citation omitted), Code § 18.2-361 prohibits any sexual act "involv[ing] contact between the mouth and genitals, including . . . oral sex." Id. at 484, 517 S.E.2d at 740.

Here, Singson solicited fellatio from an undercover officer in a public restroom. In other words, Singson sought to engage in conduct "involv[ing] contact between the mouth and genitals," specifically, "oral sex." Id. Thus, Singson's attempted conduct falls squarely within the scope of Code § 18.2-361(A). See id.; see also Lankford v. Foster, 546 F. Supp. 241, 249

n.11 (W.D. Va. 1982) (defining fellatio as "sodomy by the mouth"), aff'd, 716 F.2d 896 (4th Cir. 1983).

### 2. Appellant's Standing to Mount a Facial Challenge on Due Process Grounds

Singson argues, however, that Code § 18.2-361 is facially unconstitutional because, in light of the United States Supreme Court's holding in Lawrence, the statute—as applied to private, consensual acts of sodomy—violates the Due Process Clause of the Fourteenth Amendment. Because the statute is facially unconstitutional, Singson reasons that, even though his public conduct falls within the ambit of Code § 18.2-361, the statute cannot be enforced against him.

However, a litigant "has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." County Court of Ulster County v. Allen, 442 U.S. 140, 154-55 (1979). Thus, "[a]s a general rule, if there is no constitutional defect in the application of the statute to the litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations." Id. at 155.[2]

For example, in DePriest v. Commonwealth, 33 Va. App. 754, 537 S.E.2d 1 (2000), the appellants challenged their convictions for solicitation to commit oral sodomy, in violation of the exact statutes at issue in this appeal. The appellants contended—as does Singson—that Code § 18.2-361 was "unconstitutional on its face," reasoning that the statute, *inter alia*, "denies the fundamental right to privacy guaranteed by the Constitution of Virginia." 33 Va. App. at 758,

---

[2] The only recognized exceptions to this rule are "First Amendment challenges" and vagueness challenges that "touch[] First Amendment concerns." Santillo, 30 Va. App. at 477 n.2, 517 S.E.2d at 737 n.2 (citing Massachusetts v. Oakes, 491 U.S. 576 (1989); Broadrick v. Oklahoma, 413 U.S. 601 (1973); Kolender v. Lawson, 461 U.S. 352 (1983)); see also County Court of Ulster, 442 U.S. at 155 (noting that the "limited exception . . . recognized for statutes that broadly prohibit speech protected by the First Amendment" is "justified by the overriding interest in removing illegal deterrents to the exercise of the right of free speech"). Singson's First Amendment arguments are addressed in Part II(B), infra.

537 S.E.2d at 3. We held, however, that appellants lacked standing to mount a facial challenge to Code § 18.2-361, reasoning that the appellants fell "within the general rule that a party attacking the constitutionality of a statute must demonstrate that his own, rather than a third party's, rights are constitutionally infringed." Id. at 762, 537 S.E.2d at 5. Thus, we addressed the constitutionality of Code § 18.2-361 "only as it applie[d] to the appellants in [that] case and to the[] conduct that underlay their convictions." Id.

Similarly, in Santillo, the appellant challenged the constitutionality of Code § 18.2-361 on substantially similar grounds, contending that the statute "abridge[d] his constitutional right to privacy" because it prohibited "consensual heterosexual sex." 30 Va. App. at 477, 517 S.E.2d at 736-37. Before conducting a constitutional analysis, we noted that, "generally, a litigant may challenge the constitutionality of a law only as it applies to him or her." Id. at 477, 517 S.E.2d at 737. We further explained that whether "'the statute may apply unconstitutionally to another is irrelevant; one cannot raise third party rights.'" Id. (quoting Coleman v. City of Richmond, 5 Va. App. 459, 463, 364 S.E.2d 239, 242 (1988)).

Accordingly, as in DePriest and Santillo, we hold that Singson lacks standing to mount a facial challenge to Code § 18.2-361.[3] Rather, this Court is constrained to deciding whether Code § 18.2-361 is constitutional as applied to the circumstances of this case. And, for the reasons that follow, we hold that application of Code § 18.2-361 to Singson's proposed conduct does not offend the Due Process Clause of the Fourteenth Amendment.

---

[3] As the Commonwealth concedes, "[i]f a facial challenge is upheld, the sovereign cannot enforce the statute against anyone." Fisher v. King, 232 F.3d 391, 395 n.4 (4th Cir. 2000). Despite Singson's argument to the contrary, this particular statute has never been declared facially unconstitutional. See Part II(A)(3), infra.

3. <u>Whether Code § 18.2-361 is Constitutional as Applied to the Circumstances of this Case</u>

The United States Supreme Court has long recognized that the Due Process Clause of the Fourteenth Amendment protects individuals from state governmental interference with specific liberty interests. In <u>Lawrence</u>, for example, the United States Supreme Court examined the constitutionality of a Texas statute forbidding same-sex couples from engaging in conduct similar to that prohibited by Code § 18.2-361. <u>See</u> 539 U.S. at 563. The issue presented in <u>Lawrence</u> was "whether the petitioners were free as adults to engage in the private conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment to the Constitution." <u>Id.</u> at 564. The <u>Lawrence</u> Court overruled its earlier decision in <u>Bowers v. Hardwick</u>, 478 U.S. 186 (1986), and invalidated the Texas statute, concluding that the government cannot make "private sexual conduct a crime" because the "right to liberty under the Due Process Clause gives [individuals] the full right to engage in [that] conduct without intervention of the government." 539 U.S. at 578.

However, in <u>Lawrence</u>, the Supreme Court explicitly noted that the case being decided on appeal did not "involve public conduct or prostitution." <u>Id.</u> The Court, therefore, only addressed the constitutionality of criminalizing "adult consensual sexual intimacy in the home," <u>id.</u> at 564, leaving undisturbed the states' authority to prohibit sexual conduct that occurs in a public—rather than private—arena. <u>See, e.g.</u>, <u>State v. Thomas</u>, 891 So. 2d 1233, 1236, 1238 (La. 2005) (declining to use <u>Lawrence</u> to strike down a law criminalizing solicitation of a crime against nature, noting that "the majority opinion in <u>Lawrence</u> specifically states the court's decision does not disturb state statutes prohibiting public sexual conduct or prostitution"); <u>State v. Pope</u>, 608 S.E.2d 114, 116 (N.C. Ct. App.) (reversing dismissal of indictment based upon the defendant's "encounter with undercover police officers in which she indicated she would perform oral sex in exchange for money," reasoning that, "[a]s the <u>Lawrence</u> Court expressly excluded prostitution

and public conduct from its holding, the State of North Carolina may properly criminalize the solicitation of a sexual act it deems a crime against nature"), review denied, 612 S.E.2d 636 (N.C. 2005).

Singson argues, however, that, in Lawrence, the Supreme Court effectively declared all sodomy statutes facially unconstitutional. Singson points to the Court's statement that "Bowers was not correct when it was decided, and it is not correct today," 539 U.S. at 578, as evidencing the Supreme Court's belief that no statute encompassing private acts of sodomy can survive scrutiny under the Due Process Clause. We disagree.

In Bowers, the appellant was prosecuted for engaging in homosexual acts of sodomy in the privacy of his own home. See 478 U.S. at 187. After the indictment was dismissed, the appellant brought a suit in federal district court seeking, in essence, a declaratory judgment that the Georgia statute was unconstitutional "as applied to consensual homosexual sodomy." Id. at 187 n.2. The Bowers majority carefully stated that its decision "express[ed] no opinion on the constitutionality of the Georgia statute as applied to other acts of sodomy," id., later noting that the issue being resolved in the appeal involved the continuing imposition of "criminal penalties for sodomy performed in private and between consenting adults," id. at 194. Similarly, the principal dissent in Bowers noted that the issue being decided concerned "the right of an individual to conduct intimate relationships in the intimacy of his or her own home." Id. at 208 (Blackmun, J., dissenting).[4] Thus, despite Singson's argument to the contrary, Bowers did not

---

[4] The two dissenting opinions in Bowers differed only to the extent that the justices disagreed as to which constitutional provision should serve as the primary source of protecting private sexual conduct between consenting adults. Justice Blackmun would have relied upon the "constitutionally protected interests in privacy and freedom of intimate association," as found in the Ninth and Fourteenth Amendments, 478 U.S. at 202 (Blackmun, J., dissenting), and Justice Stevens—who also joined in Justice Blackmun's dissent—would have relied instead upon the "liberty" interest "protected by the Due Process Clause of the Fourteenth Amendment," id. at 216 (Stevens, J., dissenting). It is the latter view that was adopted by the Lawrence majority.

involve a facial challenge to the Georgia sodomy statute. At best, then, the *dicta* in <u>Lawrence</u> indicates that the as-applied challenge in <u>Bowers</u> should have been upheld, and the statement does not—as Singson contends—announce a *per se* rule that all sodomy statutes are facially unconstitutional.

Singson also argues, however, that the decision of the Virginia Supreme Court in <u>Martin v. Ziherl</u>, 269 Va. 35, 607 S.E.2d 367 (2005), effectively declared Code § 18.2-361 facially unconstitutional. In <u>Martin</u>, the Virginia Supreme Court held that Code § 18.2-344, which prohibits unmarried individuals from "voluntarily [] hav[ing] sexual intercourse with any other person," was unconstitutional in light of the decision in <u>Lawrence</u>. However, the Virginia Supreme Court carefully noted that its decision "does not involve minors, non-consensual activity, prostitution, *or public activity*." <u>Id.</u> at 43, 607 S.E.2d at 371 (emphasis added). Rather, the Court explicitly restricted its holding to "private, consensual conduct between adults and the respective statutes' impact on such conduct," further noting that its decision "does not affect the Commonwealth's police power regarding regulation of public fornication, prostitution, or other such crimes." <u>Id.</u>

Thus, to the extent that Code § 18.2-361 prohibits individuals from engaging in *public* acts of sodomy, the statute survives constitutional scrutiny under the Due Process Clause. <u>See</u> <u>State v. Whiteley</u>, 616 S.E.2d 576, 580 (N.C. Ct. App. 2005) ("[O]ur state's regulation of sexual conduct falling outside the narrow liberty interest recognized in <u>Lawrence</u> remains constitutional.").[5] And, because Singson's proposed conduct occurred in a public location,

---

[5] The principal dissent in <u>Bowers</u> says as much. <u>See</u> 478 U.S. at 212-13 (Blackmun, J., dissenting) (noting that "intimate behavior may be punished when it takes place in public," and further observing that "[s]tatutes banning public sexual activity are entirely consistent with . . . the [constitutionally-protected] liberty interest in decisions concerning sexual relations").

application of Code § 18.2-361 under the circumstances of this case does not implicate Singson's constitutionally-protected right to engage in private, consensual acts of sodomy.

Our decision in DePriest, 33 Va. App. 754, 537 S.E.2d 1, is instructive on this point. In DePriest, we affirmed the appellants' convictions for solicitation to commit oral sodomy, holding that application of Code § 18.2-361 under the circumstances of that case did not "infringe[] [the appellants'] right to privacy" because "the appellants' conduct was not private." 33 Va. App. at 762-63, 537 S.E.2d at 5. The appellants in DePriest approached "strangers in public parks" and "proposed to commit sodomy in the public parks." Id. at 763, 537 S.E.2d at 5. We held that "[t]he appellants' acts and their proposed conduct were clothed with no circumstance giving rise to a supportable claim of privacy," reasoning that, "[w]hatever may be the constitutional privacy rights of one who engages in sodomy in private, those rights do not attach to one who does the same thing in public." Id.

Similarly, here, Singson's proposed conduct was "clothed with no circumstances giving rise to a supportable claim of privacy." Id. Specifically, Singson approached a stranger in a public restroom in a public department store during business hours, and he proposed to commit sodomy in that restroom. Because Singson's proposed conduct involved a public rather than private location, application of Code § 18.2-361 under the circumstances of this case does not implicate the narrow liberty interest recognized in Lawrence. See United States v. Marcum, 60 M.J. 198, 208 (C.A.A.F. 2004) (holding that Article 125 of the Uniform Code of Military Justice, which forbids "unnatural carnal copulation with another person," was "constitutional as applied to Appellant" because the appellant's conduct, specifically, coercing a subordinate into engaging in acts of sodomy, "was outside the liberty interest recognized in Lawrence"); cf. United States v. Lemmons, 697 F.2d 832, 839 (8th Cir. 1983) (Fagg, J., concurring) (noting that an individual has no right "under the federal constitution to consummate his chosen sexual intimacy in a public

restroom"); Lovisi v. Slayton, 539 F.2d 349, 351 (4th Cir. 1976) ("What the federal constitution protects is the right of privacy in circumstances in which it may reasonably be expected.").[6]

B. Whether Code § 18.2-361 is Unconstitutional Because it is Overbroad

In the alternative, Singson contends that Code § 18.2-361 is constitutionally overbroad, reasoning that the statute "deters constitutionally protected conduct as well as unprotected conduct" because it, in conjunction with Code § 18.2-29, criminalizes "speech requesting legal acts." Specifically, Singson argues that, because private, consensual acts of sodomy are encompassed by the statutory language, Code § 18.2-361 chills protected speech because "the plain language of the solicitation law coupled with the sodomy law prohibits all discussions in which persons exercise their right to discuss private sodomy, including oral sex, and this undoubtedly reaches a substantial amount of speech."[7] For the reasons that follow, we disagree.[8]

---

[6] As noted by one federal court,

> there are many activities that the law recognizes a person may constitutionally engage in in his home that could be made criminal if done in public. For instance, a person is free to drink alcohol to the point of inebriation in his home, but could be cited for public intoxication if he left the house. A person can possess a firearm without a license in his home, but could be cited for carrying that same item in public. A person can walk around naked in his home, but could be cited for public indecency if he left his house in that condition.

United States v. Extreme Assocs., Inc., 352 F. Supp. 2d 578, 594 (W.D. Pa. 2005) (citations omitted). Similarly, although individuals may engage in private, consensual acts of sodomy free from government intrusion, the Commonwealth remains free to criminalize that conduct if—as here—it occurs in a public location.

[7] We note at the outset that Code §§ 18.2-361 and 18.2-29 do not operate, even at their fullest extent, to prohibit "all" discussions regarding sodomy and oral sex. Rather, with respect to consenting adults, only those conversations during which a party actively requests participation in public commission of an act prohibited by Code § 18.2-361 would arguably fall within the scope of the statutes.

[8] Although the statute, as applied to Singson, is constitutional, see Part II(A)(3), supra, "[l]itigants . . . are permitted to challenge a statute not because their own rights of free expression

- 11 -

The First Amendment mandates that the government "shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Although "[t]he government may violate this mandate in many ways," it is well settled that "a law imposing criminal penalties on protected speech is a stark example of speech suppression." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 244 (2002). Similarly, laws that do not directly regulate speech but, instead, tend to chill constitutionally-protected forms of expression may also run afoul of the First Amendment. See id. ("The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere."). Accordingly, if a statute chills "a substantial amount of protected expression," the statute is "unconstitutional on its face." Id. at 244, 252-53 (invalidating a federal statute that went "well beyond" the government interest in "prohibit[ing] illegal conduct" by also "restricting the speech available to law-abiding adults").

1. Whether Code § 18.2-361 is Overbroad Because it Criminalizes Constitutionally Protected Speech

Singson argues primarily that Code § 18.2-361 is constitutionally overbroad because it imposes criminal penalties on individuals who engage in constitutionally protected speech. Specifically, Singson reasons that Code § 18.2-361, in conjunction with Code § 18.2-29, directly prohibits speech proposing a private act of sodomy. For the reasons that follow, we disagree.

Initially, Code § 18.2-361 itself does not criminalize speech or *expressive* conduct. Rather, it only prohibits *sexual* conduct. See United States v. Dhingra, 371 F.3d 557, 561 (9th

---

are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Broadrick, 413 U.S. at 612. Accordingly, Singson has standing, in the narrow context of his First Amendment arguments, to challenge the facial constitutionality of Code § 18.2-361. See Stanley v. City of Norfolk, 218 Va. 504, 507, 237 S.E.2d 799, 801 (1977) ("Even when a defendant's conduct [is] not constitutionally protected and could have been proscribed by a properly drawn statute, he may have standing to assert a facial challenge based upon overbreadth which 'chills' the exercise of First Amendment rights by others." (citing Thornhill v. Alabama, 301 U.S. 88, 98 (1940))).

Cir. 2004). Accordingly, Code § 18.2-361 does not, in and of itself, prohibit conduct potentially protected by the First Amendment. See, e.g., Commonwealth v. Mayfield, 832 A.2d 418, 424 (Pa. 2003) (holding that a statute prohibiting certain forms of sexual activity was not constitutionally overbroad, reasoning that, "[o]n its face, the statute proscribes pure conduct," not "expressive activity protected by the First Amendment," further noting that the court "can conceive of no set of circumstances in which [the statute] would infringe on constitutionally protected expression"); see also Arcara v. Cloud Books, Inc., 478 U.S. 697, 705 (1986) (noting that public sexual activity "manifests absolutely no element of protected expression" and emphasizing "the fallacy of seeking to use the First Amendment as a cloak for obviously unlawful public sexual conduct"); Doe v. City of Lafayette, 377 F.3d 757, 763-64 (7th Cir. 2004) (*en banc*) (holding that the First Amendment "protection of the right of self-expression" did not extend to the defendant's "non-expressive" act of going to a public place and "looking for children to satisfy his sexual urges," reasoning that the defendant's conduct reflected "absolutely no element of protected expression").

Similarly, solicitation of a sexual act is not communicative speech, but rather, non-expressive conduct. As noted by the Virginia Supreme Court, "[l]aws prohibiting solicitation are not directed against words but against acts." Pedersen v. Richmond, 219 Va. 1061, 1066, 254 S.E.2d 95, 98-99 (1979) (upholding ordinance prohibiting solicitation of sodomy). That is, "[so]licitation . . . is the *act* of enticing or importuning on a personal basis for personal benefit or gain," and, as such, contains no element of expressive conduct. District of Columbia v. Garcia, 335 A.2d 217, 224 (D.C. 1975) (emphasis added) (distinguishing solicitation of sodomy from "advocacy of sodomy as socially beneficial," reasoning that only the latter constitutes "an act of public expression" implicating the First Amendment).

- 13 -

To the extent that an individual may be held criminally liable for soliciting a violation of Code § 18.2-361, it is not the individual's speech that is being prohibited—rather, "'speech is merely the vehicle'" through which the solicitation occurs. Dhingra, 371 F.3d at 561 (quoting United States v. Meek, 366 F.3d 705, 721 (9th Cir. 2004)). Because the prohibition against solicitation of sodomy criminalizes conduct, not expression, Code § 18.2-361—even in conjunction with Code § 18.2-29—does not directly prohibit speech or other forms of communicative conduct. See United States v. Johnson, 376 F.3d 689, 696 (7th Cir. 2004) (upholding a statute forbidding the solicitation of minors "to perform sexually explicit acts," noting that the statute "prohibited conduct, not protected speech"). Thus, we find no merit in Singson's argument that Code § 18.2-361 is constitutionally overbroad because it criminalizes constitutionally protected speech.

### 2. Whether Code § 18.2-361 is Overbroad Because it "Chills" Constitutionally Protected Speech

Singson, however, also contends that Code § 18.2-361 is unconstitutional on its face because it chills protected speech, specifically, by deterring individuals from "exercis[ing] their right to discuss private sodomy . . . ." Because Code § 18.2-361, in conjunction with Code § 18.2-29, does not chill "a substantial amount" of protected expression, Free Speech Coalition, 535 U.S. at 255, we disagree.

*a. Whether Speech Soliciting an Act of Sodomy is Protected by the First Amendment*

Initially, we must consider whether the speech allegedly being chilled is, in fact, constitutionally protected. As noted by the United States Supreme Court, "[t]he freedom of speech has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children." Free Speech Coalition, 535 U.S. at 245-46. Two of these categories of unprotected speech are potentially relevant here: obscenity and communications inciting another to commit a crime.

- 14 -

First, although speech inciting an individual to commit a crime is unprotected by the First Amendment, see Pedersen, 219 Va. at 1066, 254 S.E.2d at 98-99, it is clear, in the wake of Lawrence, that private acts of sodomy between consenting adults cannot, pursuant to the Due Process Clause of the Fourteenth Amendment, be criminally punished. And, because private acts of consensual sodomy are constitutionally protected, speech proposing a private act of sodomy no longer qualifies as an "incitement" to commit a "crime."

Second, although discussions of the conduct prohibited by Code § 18.2-361 may border on obscenity, it is not clear that those communications would be "patently offensive in light of community standards." Miller v. California, 413 U.S. 15, 24 (1973) (holding that the government, to prove obscenity, must establish that the communication "appeals to the prurient interest" and is "patently offensive in light of community standards"). Accordingly, we cannot assume that speech proposing a private act of sodomy necessarily qualifies as "obscene." See Garcia, 335 A.2d at 223 ("[T]he words used in [] sexual proposal cases may or may not be obscene in themselves.").

As noted by the United States Supreme Court, "speech may not be prohibited [or chilled] because it concerns subjects offending our sensibilities." Free Speech Coalition, 535 U.S. at 245; see also Reno v. ACLU, 521 U.S. 844, 874 (1997) ("In evaluating the free speech right of adults, we have made it perfectly clear that sexual expression which is indecent but not obscene is protected by the First Amendment." (internal quotations omitted)); FCC v. Pacifica Found., 438 U.S. 726, 745 (1978) ("The fact that society may find speech offensive is not a sufficient reason for suppressing it."). Thus, we cannot conclude that speech proposing a private act of sodomy entirely lacks First Amendment protection.

- 15 -

*b. Whether Code § 18.2-361 Impermissibly "Chills" Constitutionally Protected Speech*

The overbreadth doctrine "prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." Free Speech Coalition, 535 U.S. at 255.  To establish that Code § 18.2-361 is facially unconstitutional, Singson must therefore demonstrate, "'from the text of [the law] and from actual fact,'" Virginia v. Hicks, 539 U.S. 113, 122 (2003) (quoting N.Y. State Club Ass'n v. City of New York, 487 U.S. 1, 14 (1988))), that the criminal penalties for soliciting a violation of that statute chill "a substantial amount of protected speech," Free Speech Coalition, 535 U.S. at 255.  Although Singson contends that Code § 18.2-361 is substantially overbroad because it could potentially deter consenting adults from proposing private acts of sodomy, we find his arguments unpersuasive.

"[F]acial overbreadth adjudication is an exception to our traditional rules of practice," and the rationale behind application of the overbreadth doctrine "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct." Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973).  Moreover, courts are especially reluctant to invalidate a statute on facial overbreadth grounds when the prohibited conduct "falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." Id.; see also Parker v. Commonwealth, 24 Va. App. 681, 690, 485 S.E.2d 150, 154-55 (1997) ("Overbreadth is a doctrine whose reach dissipates when a statute proscribes primarily conduct and not speech.").  Thus, although criminal laws,

> if too broadly worded, may deter protected speech to some
> unknown extent, there comes a point where that effect—at best a
> prediction—cannot, with confidence, justify invalidating a statute

> on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.

Broadrick, 413 U.S. at 615.

Moreover, "'the existence of a "chilling effect," even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action.'" Freeman v. Commonwealth, 223 Va. 301, 310, 288 S.E.2d 461, 465 (1982) (quoting Younger v. Harris, 401 U.S. 37, 51 (1971)).  As a result,

> "[w]here a statute does not directly abridge free speech, but . . . tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relating to the need for control of the conduct and the lack of alternative means for doing so."

Id. (quoting Younger, 401 U.S. at 51).

Accordingly, where a statute regulates non-expressive conduct rather than speech, "the overbreadth of [the] statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."  Broadrick, 413 U.S. at 615.  Also, when deciding whether a statute is overbroad because it chills a substantial amount of protected speech, this Court must be cognizant of the principle that "overbreadth scrutiny [is] somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner."  Id. at 614.

As discussed above, Code § 18.2-361 does not criminalize speech or other expressive conduct.  And, as noted by the United States Supreme Court, "rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)."  Hicks, 539 U.S. at 124; see also Dhingra, 371 F.3d at 563 (noting that, where a "statute regulates conduct, not speech, it is inappropriate to bootstrap our First Amendment jurisprudence into the context of criminal sexual contact").

- 17 -

Moreover, to the extent that the statute, in conjunction with Code § 18.2-29, might "chill" an individual from requesting an act of private sodomy, speech arguably residing "in the shadow of the First Amendment," it does so "in a neutral, noncensorial manner." Broadrick, 413 U.S. at 614. Also, the statute's "legitimate sweep" encompasses not only public sodomy, but also other forms of conduct that lack constitutional protection, specifically, non-consensual sodomy, incestual sodomy, sodomy with a minor, committing sodomy in exchange for money, and engaging in acts of bestiality.[9] In our view, the incidental, hypothetical effect of the statute on speech requesting an act of private, consensual sodomy "cannot, with confidence, justify invalidating [the] statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe." Id. at 615; see also Hicks, 539 U.S. at 119-20 ("[T]here comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law," particularly when striking the statute down on its face would "block application of [the] law . . . to constitutionally unprotected conduct."); Parker v. Levy, 417 U.S. 733, 760 (1974) ("This Court has . . . repeatedly expressed its reluctance to strike down a statute on its face where there were a substantial number of situations to which it might be validly applied.").

For these reasons, we hold that Code § 18.2-361 is not substantially overbroad and, therefore, decline to strike it down as facially unconstitutional.

---

[9] According to Code § 18.2-361, "[i]f any person carnally knows in any manner any brute animal, or carnally knows any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge, he or she shall be guilty of a Class 6 felony," and "[a]ny person who performs or causes to be performed cunnilingus, fellatio, anilingus, or anal intercourse upon or by his daughter or granddaughter, son or grandson, brother or sister, or father or mother is guilty of a Class 5 felony."

C.  <u>Whether the Sentence in this Case Constitutes Cruel and Unusual Punishment</u>

Finally, Singson contends that the imposition of a three-year prison sentence, coupled with labeling his conviction a felony, constitutes cruel and unusual punishment, thus violating the Eighth Amendment of the United States Constitution and Article I, section 9 of the Virginia Constitution.  Specifically, Singson argues that his "conviction of a felony, with its prison sentence and permanent disenfranchisement, is a drastic sanction for his verbal solicitation of intimacy."

Singson, however, never made this argument to the trial court.  Although, in a footnote located in a pretrial brief, Singson noted that "the prosecution of this matter . . . raises grave concerns under the proscription of cruel and unusual punishment," this footnote is insufficient to qualify as a contemporaneous objection for purposes of Rule 5A:18.  That is, raising a "grave concern" about the potential range of punishment in a pretrial, pre-conviction brief is not equivalent to lodging a contemporaneous objection to the sentence actually imposed.  As we have noted,

> As a precondition to appellate review, Rule 5A:18 requires a contemporaneous objection in the trial court to preserve the issue on appeal.  Not just any objection will do.  It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it.

<u>Thomas v. Commonwealth</u>, 44 Va. App. 741, 750, 607 S.E.2d 738, 742 (emphasis in original), <u>aff'd on reh'g en banc</u>, 45 Va. App. 811, 613 S.E.2d 870 (2005).

Because Singson did not argue below that the sentence actually imposed by the trial court constituted cruel and unusual punishment, we hold that he failed to make a "specific" and "timely" objection to the imposition of his felony conviction.  Accordingly, we are barred from considering this issue for the first time on appeal.  <u>See, e.g.</u>, <u>Walton v. Commonwealth</u>, 24 Va. App. 757, 761, 485 S.E.2d 641, 643 (1997) (holding that Rule 5A:18 barred appellant's

argument that the sentence imposed by the trial court constituted cruel and unusual punishment where the appellant failed to raise that argument before the trial court), aff'd, 255 Va. 422, 497 S.E.2d 869 (1998); see also West v. Commonwealth, 43 Va. App. 327, 337, 597 S.E.2d 274, 278 (2004) (holding that the appellant's double jeopardy argument was barred for failure to make a timely objection because, although he "did object to the convictions, he did not inform the trial court that he objected on general constitutional or double jeopardy grounds"); Roberts v. Roberts, 41 Va. App. 513, 525, 586 S.E.2d 290, 296 (2003) (noting that this Court "will not consider on appeal an argument that was not presented to the trial court").[10]

### III.  CONCLUSION

For these reasons, we affirm Singson's conviction for solicitation to commit oral sodomy, in violation of Code §§ 18.2-29 and 18.2-361.

Affirmed.

---

[10] Singson does not ask this Court to invoke the ends of justice exception to Rule 5A:18, and we decline to do so.  See Widdifield v. Commonwealth, 43 Va. App. 559, 564, 600 S.E.2d 159, 162 (2004) (*en banc*) ("This Court will not consider, *sua sponte*, an ends-of-justice argument under Rule 5A:18.").