COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Petty and Senior Judge Bumgardner


CHARLES ROBERT OTEY

                                                                MEMORANDUM OPINION*
v.       Record No. 2558-05-3                                        PER CURIAM
                                                                    JULY 18, 2006
ROANOKE CITY DEPARTMENT
  OF SOCIAL SERVICES


                     FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                                    Jonathan M. Apgar, Judge

                    (Tonita M. Foster; Lora A. Keller; Law Office of Tonita M. Foster,
                    on briefs), for appellant.  Appellant submitting on briefs.

                    (William M. Hackworth, City Attorney; Heather P. Ferguson,
                    Assistant City Attorney, on brief), for appellee.  Appellee
                    submitting on brief.

                    (Robin Dearing, Guardian *ad litem* for the infant child, on brief).
                    Guardian *ad litem* submitting on brief.


        Charles Robert Otey appeals from an order terminating his parental rights to his son, D.S.

Otey contends (i) the trial court erred by denying his motion to appoint a new guardian *ad litem*

("GAL") for the child prior to the final evidentiary hearing, and (ii) the Roanoke City

Department of Social Services ("DSS") failed to prove by clear and convincing evidence his

parental rights should have been terminated under Code § 16.1-283(C).  Finding the first issue

procedurally defaulted and the second without merit, we affirm.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

We view the evidence and all reasonable inferences in the light most favorable to DSS, the prevailing party below. Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

Otey's minor son, D.S., was born May 3, 1998. Otey discovered he was D.S.'s father in 2002. However, D.S.'s mother retained custody of D.S. until November 2002, when a DSS court services worker requested an emergency hearing due to concerns about the mother's stability. The juvenile and domestic relations district court ("JDR district court") then granted Otey temporary custody. When the mother failed to appear at a January 2003 hearing for a review of the custody award, Otey retained custody conditioned on complying with DSS recommended treatments and therapy.

After working with Otey from January until May 2003, DSS filed a Motion to Show Cause with the JDR district court, alleging that Otey had not complied with any of its recommendations. The JDR district court granted DSS custody of D.S. and placed him in foster care. The JDR district court also found Otey in contempt and sentenced him to thirty days in jail. To regain custody of D.S., the court ordered Otey to complete the following:

> Enter into and complete a substance abuse treatment program and enter into counseling for depression;
>
> Enter into a detox program and a thirty day residential treatment program at the Shenandoah Recovery Center, to be followed by an after care program at Blue Ridge Behavioral Healthcare;
>
> Attend a minimum of two AA or NA meetings per week with documentation to DSS;
>
> Continue random drug and alcohol screens with the Court Community Corrections office;
>
> Cooperate with the Mother's visitation, which was to be supervised and arranged by DSS.

Otey failed to complete or comply with the JDR district court's orders.  At a November 2004 hearing, the JDR district court terminated Otey's parental rights.  The JDR district court also approved DSS's petition to allow D.S.'s foster parents to adopt him.  Otey appealed to the circuit court.  Following a final evidentiary hearing, the circuit court terminated Otey's parental rights.

## II.

### A.    DISQUALIFICATION OF GAL

In February 2005, Otey filed with the circuit court clerk a motion to disqualify the GAL and to appoint a replacement.[1]  The motion alleged that the GAL had been "hired" to represent DSS during a temporary period while the DSS attorney was on an unspecified "maternity leave."  Based on this conflict of interest, the motion requested the disqualification of the GAL and the appointment of a new one "prior to any hearing in this matter."

The evidentiary hearing took place in June 2005.  The record, however, does not reflect that Otey asked that the matter be placed on the motion docket prior to the evidentiary hearing.  At that hearing, Otey did not raise the issue or seek any ruling on his prior motion.  Nor did Otey at any time offer any evidence, by stipulation or otherwise, in support of the motion.  To be sure, nothing in the record suggests the circuit court ever ruled on the motion.[2]

Otey's counsel filed a 40-page brief *after* the evidentiary hearing, which the circuit court accepted in lieu of closing arguments.  Later relabeled and filed as "Objections to the Circuit Court Order," the brief stated on page 27:  "On January 31, 2005, the attorney for the Department of Social Services delivered her baby and the case which had been continued to February 4, 2005 was reset.  The guardian *ad litem* for [D.S.] took over as the Department of

---

[1] The same motion was filed twice with the clerk of court.

[2] Otey filed a similar motion in the JDR district court, which was denied.

Social Services Attorney." On page 40, the brief continued: "Further, to allow the same attorney to act as the child's guardian *ad litem* and the State's attorney at the same time is a clear conflict of interest. How could this attorney give any fair consideration to the father's position or the child's need to be with the father when her job as the State's attorney is to take the child from him[?]"

On appeal, Otey contends the trial court erred by not granting his pretrial motion to disqualify the GAL and to appoint a replacement. On appeal, DSS argues that Rule 5A:18 precludes any appellate review on this issue. We agree.

"As a precondition to appellate review, Rule 5A:18 requires a contemporaneous objection in the trial court to preserve the issue on appeal. Not just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742 (emphasis in original), aff'd, 45 Va. App. 811, 613 S.E.2d 870 (2005) (*en banc*); see also Singson v. Commonwealth, 46 Va. App. 724, 749, 621 S.E.2d 682, 693 (2005).

Under settled waiver principles, we treat a circuit court's failure to rule no differently than a ruling challenged on appeal as error. Neither can be preserved for appellate review except by a specific, contemporaneous objection in the trial court. See Buck v. Jordan, 256 Va. 535, 545-46, 508 S.E.2d 880, 885-86 (1998); Taylor v. Commonwealth, 208 Va. 316, 324, 157 S.E.2d 185, 191 (1967); Harter v. Commonwealth, 31 Va. App. 743, 752, 525 S.E.2d 606, 610-11 (2000); Fisher v. Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993).

In this case, Otey failed to give specific and timely notice to the trial court of his objection to the court's failure to rule on his pretrial motion to disqualify the GAL. Though the motion specifically requested that a replacement GAL be appointed *before* the evidentiary hearing, Otey never brought the matter to the trial court's attention prior to this hearing. Nor did

Otey raise the motion orally at the evidentiary hearing, present any evidence in support of the motion, or make any proffer of the specific nature of the alleged conflict, its duration and scope, or its potential impact (if any) on the case.

True, Otey's closing argument brief offered a few isolated comments on the subject. But none sufficiently alerted the trial court of the need to rule on a motion that, by its own terms, had been rendered moot by the completion of the evidentiary hearing. At most, the remarks in Otey's brief sought merely to discredit the GAL's recommendation based upon an unproven allegation of a conflict made in a pretrial motion that, for whatever reason, Otey chose not to pursue. For these reasons, Rule 5A:18 precludes appellate review of Otey's argument that the circuit court erred by not disqualifying the GAL and appointing a replacement prior to the evidentiary hearing.[3]

We must also observe that Otey's effort on appeal suffers from similar limitations. His opening brief devotes no more than a couple of paragraphs and a single case citation in support of his GAL disqualification argument. The reasoning is largely perfunctory and the case cited legally extraneous.[4] Nowhere does the appellate brief direct our attention to any specific factual evidence in the record (as opposed to mere allegations in written motions and briefs) supporting counsel's disqualification argument in the circuit court. Rule 5A:20(e) requires appellants to brief the "principles of law, the argument, and the authorities relating to each question presented." Questions "unsupported by argument, authority, or citations to the record do not

---

[3] On appeal, Otey does not argue in the alternative that the "good cause" and "ends of justice" exceptions to Rule 5A:18 apply to this case. We will not invoke these exceptions *sua sponte*. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 63 n.3, 628 S.E.2d 74, 77 n.3 (2006) (*en banc*); Widdifield v. Commonwealth, 43 Va. App. 559, 564, 600 S.E.2d 159, 162 (2004) (*en banc*).

[4] Appellant cites only Santosky v. Kramer, 455 U.S. 745 (1982), which holds that the clear-and-convincing burden of proof applies to parental termination cases.

merit appellate consideration." Epps v. Commonwealth, 47 Va. App. 687, 718, 626 S.E.2d 912, 926-27 (2006) (*en banc*); Mullin v. Mullin, 45 Va. App. 289, 306, 610 S.E.2d 331, 339 (2005).[5] On this ground as well, we find it inappropriate to reach the merits of Otey's appellate challenge to the circuit court's failure to disqualify the GAL.

### (B)  TERMINATION OF PARENTAL RIGHTS

Otey's final issue on appeal is that the trial court erred by finding that DSS met its burden under Code § 16.1-283(C)(2)

> with respect to Charles Robert Otey and [D.S.] especially considering that DSS had placed the minor child in Mr. Otey's custody when DSS had full knowledge of Mr. Otey's extensive medical and psychological history as well as his marijuana use for medical purposes, and knew of prior difficulties with money, transportation, and coordination, and especially if the Court had access to Foster Plan C of the Virginia Department of Social Services Foster Care Manual titled, "Confidential Information Provided to the Court Only."

Code § 16.1-283(C) provides:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> \*     \*     \*     \*     \*     \*     \*
>
> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.  Proof that the parent

---

[5] See also Jeter v. Commonwealth, 44 Va. App. 733, 739-40, 607 S.E.2d 734, 737 (2005); Cirrito v. Cirrito, 44 Va. App. 287, 292 n.1, 605 S.E.2d 268, 270 n.1 (2004); Budnick v. Budnick, 42 Va. App. 823, 833, 595 S.E.2d 50, 55 (2004); Boyd v. County of Henrico, 42 Va. App. 495, 506 n.6, 592 S.E.2d 768, 773 n.6 (2004) (*en banc*); Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003); Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Code § 16.1-283(C) mandates a two-prong showing to terminate a parent's rights. First, the termination must be in the child's best interests. Second, subpart (C)(2) requires a showing that "the parent has been unwilling or unable to remedy substantially the conditions that brought the child into foster care." Akers v. Fauquier County Dep't of Soc. Servs., 44 Va. App. 247, 257-58, 604 S.E.2d 737, 742 (2004).

### a. Prong One

The evidence supported the trial court's finding that adoption would be in D.S.'s best interests pursuant to the factors outlined in Code § 20-124.3. Regarding factor (1) "the age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs," the court found that D.S. has been in foster care for over two and one-half years. During his time in foster care, he has been making perfect grades in school. He has bonded with his foster mother, and is engaged with his friends and in his activities.

Along with D.S.'s successful adjustments in school and at home, the evidence regarding Otey's mental and physical health proved that adoption would be in D.S.'s best interests. Code § 20-124.3 (considering factor (2), "the age and physical and mental condition of each parent," and factor (3), "the relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child"). Otey suffers from a major

depressive disorder, and has required psychiatric hospitalization twice within the past three years. He has been addicted to marijuana since he began court-ordered testing, despite the court order. He has not been gainfully employed in a number of years and, at the time of the hearing, relied on financial assistance from various public agencies for food, housing, and medical needs. In addition, the evidence proved that Otey consistently thwarted attempts to promote a healthy relationship between D.S. and his mother. Id. (considering factor (6), "the propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child").

When we review a trial judge's decision, we presume the "trial court . . . thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). Accordingly, the evidence proved DSS satisfied the first prong of Code § 16.1-283(C) by proving that adoption would be in D.S.'s best interests.

### b. Prong Two

DSS also met the second prong of Code § 16.1-283(C) by showing that Otey was unable or unwilling "to remedy substantially the conditions which led to or required continuation of [D.S.'s] foster care placement" as required by Code § 16.1-283(C)(2).

The statute allows the trial judge to consider the circumstances both prior to and after foster care placement, including DSS's prior effort to "rehabilitate the parent . . . prior to the placement of the child in foster care." Code § 16.1-283(C)(2). During the period when Otey had custody of D.S., DSS asked that Otey attend Blue Ridge Behavioral Healthcare's Mentally Ill Chemically Addicted (MICA) program pursuant to the order from the JDR district court. The MICA program was described as the least intensive of the Blue Ridge Recovery programs. Although Otey attended MICA in February 2003, he missed numerous appointments and never

completed the treatment. In March 2003, Otey rescinded his DSS health care release forms, so DSS could no longer obtain information from Otey's health care providers, and could no longer monitor his case.

Otey failed to document his attendance at any of the Narcotics Anonymous or Alcoholics Anonymous meetings DSS required pursuant to the court order, and Otey failed to cooperate with the random drug screenings. Otey complied with the court-ordered drug screenings in January, June, and September 2003, and tested positive for marijuana each time. Otey allowed a DSS case worker to make three home visits, but refused any further visits, and refused to take her phone calls after April 2003.

DSS further documented Otey's repeated failures to comply with court-ordered treatment and his inability to progress in the recommended rehabilitation programs after D.S. was placed in foster care in September 2003. The DSS initial foster care service plan required Otey to fully cooperate with DSS, maintain contact with the case worker, report changes in his current situation, comply with all services identified in the court order and service plans proposed by DSS, and comply with any other recommendations from other service providers.

Otey did not comply with the DSS plan of recommended treatment programs, and failed to document or attend meetings with Alcoholics Anonymous or Narcotics Anonymous. He also failed to complete his parenting classes, and failed to attend drug screenings.

Otey relies on the testimony of Dr. Neil Musselman, a psychiatrist, regarding progress Otey made in his therapy to show that he was able to "remedy substantially the conditions which led to or required continuation of [D.S.'s] foster care placement." Dr. Musselman testified Otey's recent mood had been within normal limits. He also testified Otey had changed since his treatment:

> I think he has had a better control of his anger. He has presented
> generally a less irritable, agitated manner. With me he has been

perfectly cooperative, logical, rational. I think his mood has
improved and he doesn't demonstrate as much anxiety as he did
when I first began to work with him.

Dr. Musselman also testified he saw no issues with Otey's ability to parent, although he

had not seen D.S. and Otey together. Regarding Blue Ridge's handling of Otey's case, Dr.

Musselman stated:

> [F]rankly, our agency I don't think as a whole has done a good job
> in presenting an organized coherent report of his participation
> within the agency.
>
>     *    *    *    *    *    *    *
>
> My experience has been that what they have presented has been
> fragmented and somewhat disorganized and I personally have been
> frustrated by it.

Regardless, the trial court was not required to accept Dr. Musselman's testimony as

conclusive. Otey's recent progress came well after the twelve-month period prescribed in the

statute. Code § 16.1-283(C)(2) ("The parent or parents, without good cause, have been unwilling

or unable within a reasonable period of time not to exceed twelve months from the date the child

was placed in foster care . . . .").

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great

weight and will not be disturbed on appeal unless plainly wrong or without evidence to support

it." Martin, 3 Va. App. at 20, 348 S.E.2d at 16. The JDR district court had required Otey to

complete treatment for his depression and addictions to maintain and then regain custody of his

child. DSS proved by clear and convincing evidence that termination of Otey's parental rights

was in D.S.'s best interest and that despite the passage of several years and repeated attempts,

Otey could not substantially remedy his mental health issues and drug addiction that led to D.S.'s

continued placement in foster care. "It is clearly not in the best interests of a child to spend a

lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming

his responsibilities." <u>Kaywood v. Halifax County Dep't of Soc. Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990); <u>accord</u> <u>Roanoke City Dep't of Soc. Servs. v. Heide</u>, 35 Va. App. 328, 336-37, 544 S.E.2d 890, 895 (2001).  Accordingly, we affirm the rulings of the trial court.

<u>Affirmed.</u>