Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Carrico, S.J.[1]

JOHN W. AINSLIE, SR., ET AL.

OPINION BY
v. Record No. 020595     SENIOR JUSTICE HARRY L. CARRICO
February 28, 2003

MICHAEL A. INMAN, RECEIVER, ETC., ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
S. Bernard Goodwyn, Judge

This is an appeal from a final order in a declaratory judgment proceeding involving the application of provisions of the Uniform Commercial Code (the UCC)[2] and the Uniform Partnership Act (the UPA).[3] The proceeding began when John W. Ainslie, Sr., John W. Ainslie, Jr., and Jeffrey W. Ainslie (collectively, the Ainslies), filed a petition for declaratory judgment against Robert M. Buchanan, Jr. (Buchanan), and Robert L. Byrd (Byrd), equal owners of a Virginia general partnership known as B & B Partnership (the partnership). In the petition, the Ainslies sought a declaration that their security interest in the 50% interest of Buchanan in the partnership had priority

---

[1] Chief Justice Carrico presided and participated in the hearing and decision of this case prior to the effective date of his retirement on January 31, 2003.

[2] The UCC was revised effective July 1, 2001. 2000 Va. Acts ch. 1007. Because the events in this case occurred prior to July 1, 2001, we will refer to the pre-revision version of the UCC in determining the rights of the parties.

[3] The present version of the Virginia Uniform Partnership Act became effective July 1, 1997. 1996 Va. Acts ch. 292. Section 50-73.149 of the new act provides that "[t]his chapter does not affect an action or proceeding commenced or right accrued before July 1, 1997." This proceeding was commenced

over any other claim to Buchanan's interest.[4] Also named as defendants were Michael A. Inman, Receiver for the interest of Buchanan in the partnership, and Kevin B. Rack, Trustee under the Will of Robert M. Buchanan, Sr. (Rack), the holder of a judgment against Buchanan.

The Ainslies and Rack both moved for summary judgment. The trial court denied the Ainslies' motion and granted Rack's, holding in a final order that Rack had first lien priority to any distributions of income and profits due to Buchanan from the partnership. We awarded the Ainslies this appeal.

The record, consisting mainly of stipulations of fact by the parties, shows that in addition to owning a 50% interest in the partnership, Buchanan was president of Festive Foods, Inc. In 1995, the Ainslies loaned Festive Foods $100,000.00, and on January 24, 1995, Festive Foods executed two promissory notes, each in the amount of $50,000.00, payable to the Ainslies. Buchanan personally guaranteed each note, and on January 24, 1995, signed a security agreement pledging his interest in the partnership as collateral for the notes. On January 26, 1995, the Ainslies duly filed financing statements listing the collateral with the clerks of the State Corporation Commission,

---

prior to July 1, 1997, so we will refer to the previous provisions relating to general partnerships.

[4] The partnership's only asset consisted of a "significant" undeveloped tract of land in the City of Chesapeake.

the Circuit Court of the City of Chesapeake, and the Circuit Court of the City of Virginia Beach.[5]

On May 8, 1997, Rack obtained a judgment against Buchanan in the Circuit Court of the City of Chesapeake in the amount of $512,735.81. The judgment also allowed Rack interest and attorney's fees.

On June 3, 1997, Festive Foods executed a note payable to the Ainslies in the principal amount of $150,000.00, apparently replacing the two notes executed on January 24, 1995. Buchanan guaranteed payment of the new note, and it was secured pursuant to the security agreement he executed on January 24, 1995.

On April 15, 1998, Rack filed a petition in the trial court for the entry of an order pursuant to Code § 50-28,[6] part of the UPA, charging Buchanan's interest in the partnership with the judgment Rack had obtained against Buchanan on May 8, 1997. At the time of the hearing on the petition, payment of the $150,000.00 note executed by Festive Foods on June 3, 1997, was not in default. The Ainslies moved to intervene in the proceeding, but the trial court denied their motion, holding

---

[5] A filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration date of the five-year period unless a continuation statement is filed prior to the lapse. Code § 8.9-403(2).

[6] Code § 50-28 provided that upon application by a judgment creditor of a partner, the court may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt and may appoint a receiver of the debtor partner's

3

they were not judgment creditors within the meaning of Code § 50-28. On May 18, 1998, the court granted Rack an order charging Buchanan's interest in the partnership with Rack's judgment and appointing Inman as a receiver for Buchanan's share of the profits from the partnership and any other money due or to fall due to him in respect of the partnership.

In early June 1998, Buchanan defaulted in payment of the $150,000.00 note. In a letter dated June 4, 1998, counsel for the Ainslies notified Buchanan and Byrd, the owner of the other 50% of the partnership, that the letter would "serve as notice that pursuant to the default of the underlying promissory note, [the Ainslies were] taking possession of and foreclosing upon the partnership interests of [Buchanan in the partnership]." This letter also instructed "the partnership to transfer the name of ownership of the former interest of [Buchanan] to [the Ainslies]." The Ainslies received no response from Buchanan or his partner to the June 4 letter or any evidence that the partnership had transferred the name of the ownership of Buchanan's interest in the partnership to the Ainslies.

On August 6, 1998, the Circuit Court of the City of Chesapeake entered a consent judgment order in favor of the Ainslies against Buchanan in the amount of $150,000.00, with interest. This judgment remained of record with no amendments

share of the profits and of any other money due or to fall due to the debtor partner in respect of the partnership.

4

or notations at the time the present proceeding was pending in the trial court.  Further, from the date the Ainslies received their judgment in 1998 until their filing of the present petition for declaratory judgment on August 25, 2000, the Ainslies "took no collection actions against Buchanan through the courts (i.e., a summons to answer debtor's interrogatories, a summons in garnishment, a levy, etc.)."

January 26, 2000, marked the five-year anniversary of the filing of the Ainslies' financing statement.  The five years elapsed without the filing of a continuation statement as provided by Code § 8.9-403(2).

In mid-2000, counsel for the partnership disbursed two checks totaling approximately $200,000.00 to Inman, as receiver, representing what the partnership claimed was Buchanan's share of the partnership's profits from the sale of a portion of the partnership's land.  Inman still holds the funds in his capacity of receiver.  On July 28, 2000, Inman filed a petition with the Circuit Court of the City of Chesapeake asking the court to determine the priority of claims between Rack and the Ainslies to Buchanan's interest in the partnership.

On August 25, 2000, the Ainslies filed the present declaratory judgment proceeding asking the trial court to declare that their security interest had priority over Rack's judgment.  On May 2, 2001, the Ainslies filed a motion asking for the entry of a charging order on their judgment against

5

Buchanan.  In its final order entered December 5, 2001, the trial court granted the Ainslies a charging order but declared that it was junior in priority to Rack's charging order entered May 18, 1998.

The Ainslies have assigned three errors.  The first two involve the interpretation of several statutes.  The Ainslies maintain, and Rack agrees, that the interpretation of statutes presents a pure question of law subject to *de novo* review by this Court.   See Cain v. Rea, 159 Va. 446, 450, 166 S.E. 478, 479 (1932).  The third assignment of error involves the legal effect of the letter that the Ainslies' counsel directed to Buchanan and his partner on June 4, 1998.  The Ainslies maintain, and Rack agrees, that the legal effect of a writing is also a question of law.  Baker Matthews Lumber Co. v. Lincoln Furniture Mfg. Co., 148 Va. 413, 421, 139 S.E. 254, 257 (1927).  Yet, as Rack states, although we review the matters involved in the case *de novo*, the trial court's judgment is presumed to be correct and stands until error has been pointed out.  See Lavenstein v. Plummer, 179 Va. 469, 471, 19 S.E.2d 696, 697 (1942).

The Ainslies' first two assignments of error focus upon Code § 8.9-501(5).  That subsection provides that "[w]hen a secured party has reduced his claim to judgment the lien of any levy which may be made upon his collateral by virtue of any

6

execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral."

The Ainslies state that a levy on a partnership interest is effected by obtaining a charging order, see O.C. Partnership v. Owrutsky & Associates, P.A., 596 A.2d 76, 78 (Md. 1991), and that a charging order is a type of levy of execution pursuant to a judgment within the contemplation of Code § 8.9-501(5). The Ainslies say that a secured creditor who reduces a claim to judgment prior to the expiration of his perfected security interest "is entitled to the relation back provision for a subsequent execution on the judgment, even if that execution occurs after the lapse of the [financing statement] filing."

The Ainslies maintain that they reduced their claim to judgment on August 6, 1998, before the expiration of their financing statement and when they had a perfected security interest in Buchanan's partnership interest. Hence, the Ainslies conclude, the execution on their judgment in the form of the charging order they obtained on December 5, 2001, related back to January 26, 1995, the date the security interest was perfected, making their charging order of first priority over Rack's charging order.

We disagree with the Ainslies. As Rack states, it is a familiar rule of statutory construction that when a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning,

7

force, and effect to each.  See Kole v. City of Chesapeake, 247 Va. 51, 56, 439 S.E.2d 405, 408 (1994).  Pursuant to this rule, we think it is necessary to read and construe Code § 8.9-501(5) together with Code § 8.9-403(2).  In pertinent part, Code § 8.9-403(2) provides as follows:

> [A] filed financing statement is effective for a period of five years from the date of filing.  The effectiveness of a filed financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse. . . .  If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.

(Emphasis added.)  Hence, the Ainslies' financing statement lapsed five years from the date of its filing, and, without the filing of a continuation statement prior to the lapse, their security interest in Buchanan's partnership interest is deemed to have been unperfected against Rack, who became a lien creditor before the lapse.[7]  And since the security interest

---

[7] The Ainslies argue that they were not required to file a continuation statement, and they cite the unreported case of Chrysler Credit Corp. v. United States, 1978 U.S. Dist. LEXIS 19263, 24 UCC Rep. Serv. 794 (E.D. Va. 1978), in support of their argument.  However, the case is inapposite.  In the first place, Code § 8.9-501(5) was not involved in that case and was not even mentioned in the opinion.  Furthermore, the creditor's financing statement lapsed during the pendency of the litigation, and, therefore, the court ruled there was no necessity for the creditor to continue filing financing statements.

The Ainslies also cite Hanley Implement Co. v. Riesterer Equipment, Inc., 441 N.W.2d 304 (Wis. Ct. App. 1989), but that decision actually supports Rack's position in the present case. There, the creditor's financing statement lapsed after the date the collateral was purchased by a third party and before the

remained unperfected at the time the trial court awarded the Ainslies a charging order on December 5, 2001, they were not entitled to the benefit of the relation back provision of Code § 8.9-501(5).  This view of the matter is confirmed by Note 6 of the Official Comment to Code § 8.9-501(5), which states that

> subsection (5) makes clear that any judgment lien which the secured party may acquire against the collateral is, so to say, a continuation of his original interest (<u>if perfected</u>) and not the acquisition of a new interest or a transfer of property to satisfy an antecedent debt.

(Emphasis added.)  The trial court did not err, therefore, in holding that the Ainslies' charging order was junior in priority to Rack's charging order.

The Ainslies argue, however, pursuant to their third assignment of error, that despite Rack's charging order, they had the right to repossess and foreclose upon Buchanan's partnership interest, which they did with a "strict foreclosure" under Code § 8.9-505(2).  This subsection provides in pertinent part as follows:

> In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation.  Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection. . . .  If the secured party receives objection in writing from a person entitled to receive notification within twenty-one days after the notice was sent, the

---

creditor filed suit against the purchaser.  The court held that the creditor's security interest was deemed to have been unperfected when the third party purchased the collateral and hence the buyer took the property free and clear of the creditor's security interest.

9

> secured party must dispose of the collateral under § 8.9-504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.

Hence, as the Ainslies acknowledge, in order to meet the requirements of a strict foreclosure, the secured party must show (1) that a default exists, (2) that the secured party is in possession of the collateral, (3) that the secured party has given written notice to the debtor that the secured party proposes to retain the collateral in full satisfaction of the debt, and (4) that a period of twenty-one days has been allowed the debtor to object to the proposal.

There is no question that Buchanan defaulted in his payment of the promissory note in question, and we will assume, without deciding, that the Ainslies were in possession of the collateral. They failed, however, to satisfy the third requirement, i.e., that they proposed to retain the collateral in full satisfaction of the debt. The nature of the proposal that the secured party is required to make is expressed in Note 1 of the Official Comment to Code § 8.9-505 as follows: "In lieu of resale or other disposition, the secured party may propose under subsection (2) that he keep the collateral as his own, thus discharging the obligation and abandoning any claim for a deficiency."

And, as Ronald A. Anderson states in his treatise on the UCC:

The notice required by UCC § 9-505 must clearly state the creditor's intention to retain the collateral in satisfaction of the secured debt.

A notice will be held as a matter of law to not comply with UCC § 9-505 when it does not clearly and explicitly inform the debtor that the creditor was retaining the collateral in full satisfaction of the debt.

10 Ronald A. Anderson, <u>Anderson on the Uniform Commercial Code</u> § 9-505:84, 907 (3rd ed. 1999).

As noted previously, in the June 4, 1998 letter, the Ainslies notified Buchanan and his partner that the Ainslies were "taking possession of and foreclosing upon the partnership interests of [Buchanan in the partnership]," and the letter instructed "the partnership to transfer the name of ownership of the former interest of [Buchanan] to [the Ainslies]." Nothing in this language would lead a reasonable person to believe that the creditor intended to retain the collateral in full satisfaction of the debt. The language does not "clearly and explicitly inform the debtor that the creditor was retaining the collateral in full satisfaction of the debt." <u>Id.</u> Hence, the notice, as a matter of law, does not comply with Code § 8.9-505(2).[8]

Finally, the Ainslies argue that if we find they did not perform a strict foreclosure on Buchanan's partnership interest pursuant to Code § 8.9-505(2), then we should find that they

_____

[8] This holding renders moot the question whether the Ainslies satisfied the fourth requirement for strict

11

foreclosed on the partnership interest pursuant to Code § 8.9-504. The Ainslies say that § 8.9-504 only requires the creditor to dispose of the collateral in a commercially reasonable manner. Once Buchanan defaulted, the Ainslies assert, they had a right to sell or dispose of the collateral, in the language of Code § 8.9-504(3), "at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable."

The difficulty with this argument is that it is not cognizable in this proceeding. "A court cannot enter a decree or judgment on a right which has not been pled or claimed." Smith v. Sink, 247 Va. 423, 425, 442 S.E.2d 646, 647 (1994). The Ainslies premised their petition for declaratory judgment solely upon the contention that they had performed a strict foreclosure of their security interest in the collateral. Code § 8.9-504 is not mentioned in the petition, and the petition contains no allegation that the Ainslies foreclosed pursuant to that Code section. On the other hand, Code § 8.9-505(2), the strict foreclosure statute, is quoted in full and the allegation is made that because no person objected within twenty-one days of notice, a provision unique to § 8.9-505(2), the Ainslies were the legal owners of Buchanan's partnership interest. Hence, we

---

foreclosure, namely, that the debtor be allowed a twenty-one day period to object.

12

will not consider the Ainslies' argument based upon Code § 8.9-504.

For the reasons assigned, we will affirm the judgment of the trial court.

<u>Affirmed</u>.