672 S.E.2d 917

Lawrence W. ROSEBOROUGH

v.

COMMONWEALTH of Virginia.

Record No. 2377–07–4.

Court of Appeals of Virginia,
Alexandria.

Feb. 24, 2009.

Hunter A. Whitestone (Whitestone, Brent, Young & Merril, P.C., on brief), Fairfax, for appellant.

(Robert F. McDonnell, Attorney General; J. Robert Bryden II, Assistant Attorney General, on brief), for appellee. Appellee submitting on brief.

Present: Judges HUMPHREYS, HALEY and BEALES.

BEALES, J., Judge.

Lawrence W. Roseborough (appellant) was convicted by the trial court of driving while intoxicated (DWI), in violation of Code § 18.2–266. On appeal, he argues that the trial court erred in admitting a certificate of analysis containing the results of his breath test because the "test was not administered pursuant to the implied consent law." Specifically, he contends that his arrest was unlawful and, therefore, Code § 18.2–268.2(A), commonly referred to as the implied consent statute, required the exclusion of the certificate of analysis from his trial. Assuming without deciding that the officer did not have statutory authority to arrest appellant, we find the trial court did not err in admitting the certificate into evidence given the facts presented in this case. We find the implied consent statute was not used in this case to obtain the breath sample because appellant expressly volunteered to provide the sample before the officer could even mention the provisions of the implied consent statute to him. Thus, we affirm appellant's conviction.

## BACKGROUND [1]

On January 15, 2007, Charles Banks was working as a guard at the Watergate at Landmark apartment complex in the City of Alexandria. At about 2:00 a.m., he "[h]eard an accident." Banks rushed to the scene, which was on the complex's private road rather than on a public street. As he arrived, Banks observed appellant standing beside the open, driver's-side door of a pickup truck that had run over the curb of the private road and gotten "stuck" on a hill.

Officer Seth Weinstein responded within thirty minutes of the crash. Appellant told Officer Weinstein that his friend, Jay, was driving the truck, but he "ran off." Appellant could

---

1. We review the evidence on appeal in the light most favorable to the party who prevailed below, here, the Commonwealth, and, therefore, also grant to the Commonwealth all reasonable inferences fairly deducible from the evidence. *Sabo v. Commonwealth*, 38 Va.App. 63, 69, 561 S.E.2d 761, 764 (2002).

not tell the officer Jay's last name, phone number, or address, other than to say that Jay lived in the apartment complex. Appellant admitted that he had been drinking at a bar in the District of Columbia. Appellant then said, "I brought [Jay] back here," which the officer believed was an admission that appellant had been driving the truck.

Appellant smelled of alcohol, he swayed as he walked, his eyes were bloodshot and watery, and he spoke very loudly. He refused to perform any field sobriety tests at the scene. The officer arrested him for DWI based on appellant's admissions and the officer's observations at the scene. In a search pursuant to that arrest, Officer Weinstein discovered a remote key for the truck in appellant's pocket. The ignition key was still in the ignition.

As Officer Weinstein was transporting appellant to the detention center after his arrest, appellant said "he was considering blowing [into the Intoxilyzer[2]] for [the officer] because [he] had been so nice." Appellant added that "he would blow if [the officer] would consider releasing him if he blew into the Intox[ilyzer]." Officer Weinstein responded that, if appellant's breath test resulted in a blood/breath alcohol concentration (BAC) reading of .05 or less, then appellant "would be presumed to be sober in Virginia and he would be released and not charged" with DWI. When they arrived at the detention center, as the officer was reading the *Miranda* warnings to him, appellant "brought the subject up and said that he was willing to blow and he wanted to blow." Up to that point, the officer had not decided whether he would even bring up the breath test, as he was not sure that the implied consent law applied when, as here, a suspect was arrested on private property. However, as the officer put it, appellant "made the decision" for him when he volunteered to take the test. Officer Weinstein administered the test, appellant blew into the Intoxilyzer, and the breath test resulted in a BAC reading of .09.

---

**2.** An Intoxilyzer is a machine used by the police to take a breath sample and test that sample for alcohol content.

At trial,[3] Officer Weinstein testified about the events leading to appellant's arrest and appellant's offer to take the breath test. The officer testified that he was a certified Intoxilyzer operator, that he administered the test, that he observed appellant for twenty minutes before administering the test, and that he did not observe any behavior that would have affected the outcome of the test. The officer identified the certificate of analysis that was created when he administered the test, and he identified his signature on the attestation line of the certificate. The Commonwealth then moved for the introduction of that document into evidence.

Appellant objected to introduction of the certificate. He argued that, because the officer did not have statutory authority to arrest appellant under Code § 19.2–81 (both because the DWI, which was a misdemeanor offense in this case, did not occur in the officer's presence and because the accident did not occur on a public highway), the implied consent statute did not apply to say that appellant was "deemed as a condition of such operation [of his car] to have consented to a blood test or breath test." Therefore, he contended, the certificate was not admissible. Appellant did not argue that the certificate failed to meet any of the evidentiary requirements found in Code § 18.2–268.9 for admission of a certificate of analysis nor did he make any argument regarding hearsay or other rules of evidence. Instead, appellant's sole objection to the introduction of the certificate was that the situation did not constitute "a proper arrest" for the application of the implied consent law to obtain the breath sample, so the certificate was inadmissible. In response to the argument that he voluntarily took the test, appellant argued that agreeing to the test did not validate his arrest.

---

3. At trial, appellant also made a motion to suppress the evidence collected by Officer Weinstein, arguing that the officer effectuated the arrest without probable cause. The trial court denied this motion. Appellant requested appellate review of this ruling in his petition for appeal, but this Court did not grant his petition in relation to that question presented. Therefore, the issue of probable cause is not before us, and we may not examine the trial court's finding that the officer had probable cause to arrest appellant. *See* Rules 5A:12 and 5A:15.

The trial court overruled appellant's objections and admitted the certificate. The court then found appellant guilty of DWI.

On appeal, appellant argues that the results of the breath test here were inadmissible because "the accused must first be validly arrested." He does not reference any rule of evidence that would exclude a certificate created when a suspect, on his own initiative, has asked an officer to perform the Intoxilyzer test without first being informed about the implied consent statute. Appellant simply contends that the officer did not follow the "arrest" provision of Code § 18.2–268.2, and, thus, the certificate was not admissible. Specifically, he contends that the officer could not presume that appellant consented to take the test under Code § 18.2–268.2 because the arrest was improper, and, therefore, the trial court erred in not excluding the certificate.

## ANALYSIS

Appellant argues that Officer Weinstein did not have statutory authority to arrest him under Code § 19.2–81. He contends that, because Code § 18.2–268.2, the implied consent statute, applies only where an officer effectuates a statutorily valid arrest, that statute precluded admission of the certificate of analysis at his trial. For the purposes of this opinion, we assume without deciding that Officer Weinstein did not have statutory authority to arrest appellant. *See* Code §§ 19.2–81 and 18.2–266. However, appellant's conclusion that the implied consent statute precluded introduction of the certificate of analysis at his trial does not follow from this premise.[4]

---

4. Appellant does not ask this Court to apply the Fourth Amendment to suppress the certificate of analysis. At oral argument, appellant agreed that he was specifically arguing that the implied consent statute applied and that Code § 18.2–268.2 should have excluded the certificate of analysis. Appellant's argument does not reference any general rule of evidence, however, but instead is based on a statutorily unlawful arrest. Therefore, his argument is more akin to a suppression motion than a hearsay or other evidentiary objection.

Appellant's analysis ignores a critical fact in the posture of this case—Officer Weinstein never read the implied consent law to appellant and did not obtain appellant's consent to blow into the Intoxilyzer by informing him of the implied consent law. Instead, appellant volunteered to take the test before Officer Weinstein had even decided if he could use the implied consent law to obtain a breath sample from appellant. Appellant *actually initiated* the taking of the test and *explicitly* volunteered to take it before he could be informed of the implied consent statute.[5]

Code § 18.2–268.2(A) addresses when a person is *deemed to consent* to a breath test. The statute simply states:

Any person, whether licensed by Virginia or not, who operates a motor vehicle upon a highway, as defined in § 46.2–100, in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of § 18.2–266, 18.2–266.1, or subsection B of § 18.2–272 or of a similar ordinance within three hours of the alleged offense.

Code § 18.2–268.2(A). In other words, a person driving on Virginia's roads has implicitly consented to take a breath test, so officers can refer to this statute when they want to convince a driver to provide a sample for a breath test.[6] This statute does not address *all* instances when a breath test may be

---

**5.** At trial and on appeal, appellant did not argue that his willingness to submit to the test was involuntary or tainted in any way. He argued simply that the fact that the officer did not have authority to arrest him, together with the requirement that a lawful arrest precede a breath test taken under the implied consent statute, required that the trial court exclude the certificate of analysis from his Intoxilyzer test, even though appellant actually initiated the taking of the breath test himself without ever being informed of the provisions of the implied consent statute.

**6.** Under Code § 18.2–268.3, a driver may be subjected to civil or criminal penalties for "unreasonably" refusing to take a breath or blood test pursuant to Code § 18.2–268.2.

taken and includes no language addressing the *admissibility* of the resulting certificates of analysis at trial. The statute contains no language addressing situations such as the one here, where a defendant actually volunteered to take the breath test before an officer could tell him about the implied consent statute. Where a driver asks to have a breath test taken, as occurred here, the statute on its face has no relevance. *See Hubbard v. Henrico Ltd. Pshp.*, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998) (courts should look to the plain language of statutes).

Appellant points to several Virginia appellate decisions that have addressed the admissibility of breath test certificates under Code § 18.2–268.2 and argues that these cases required the exclusion of the certificate of analysis in this case. However, these cases are clearly distinguishable and inapplicable here.

In *Thomas v. Town of Marion*, 226 Va. 251, 254, 308 S.E.2d 120, 122 (1983), Thomas was "not properly arrested" under the Code because the arresting officer did not have a warrant nor did he observe the accident that led to the misdemeanor charge. *See* Code § 19.2–81. After this arrest, the officer informed Thomas of the implied consent statute. 226 Va. at 253, 308 S.E.2d at 121. Later in the evening, Thomas was properly arrested pursuant to a warrant, but this arrest was more than two hours [7] after the accident, and the administration of the breath test occurred after this second arrest. In finding that the trial court should have excluded the certificate of analysis from Thomas's breath test, the Supreme Court explained:

> Since the arrest was untimely, the defendant is not deemed to have consented to the testing of his breath under the "implied consent" law. Moreover, defendant's *actual con-*

---

7. At the time of Thomas's arrest, Code § 18.2–268, the precursor to the current implied consent statute, required that a suspect be arrested within two hours of an accident in order for the implied consent law to apply. The current statute extends the time to three hours. Code § 18.2–268.2(A). Appellant has never argued that the test was administered more than three hours after the accident.

*sent* in this case was invalid because it was based upon a belief, generated by the officer's recitation of the law, that he was bound to submit to a test. Hence, receipt of the certificate in evidence was improper.

*Id.* at 254, 308 S.E.2d at 122 (emphasis added).

The Supreme Court did not conclude its analysis in *Thomas,* as appellant would now have us do, by simply finding that the arrest was unlawful or "untimely." Instead, the Court specifically added that Thomas's *actual consent* was invalid because the officer obtained that consent by informing Thomas that "he was bound to submit to a test," when the law did not actually require that he provide a breath sample because the officer requested the sample more than two hours after the accident. *Id.* Here, in contrast, Officer Weinstein never informed appellant about the provisions of the implied consent statute nor had he even raised the issue of an Intoxilyzer test. Before the officer could even decide whether the provisions of the implied consent statute applied in this situation, appellant initiated this discussion by saying, without any previous mention of implied consent or of taking a breath sample for testing, that he wanted to take the Intoxilyzer test.

As appellant *volunteered* to provide the breath sample, without being influenced by the provisions of the implied consent law, those provisions are irrelevant here. *Thomas,* rather than supporting appellant's argument, instead suggests that actual consent to take a breath test, without any reliance on the provisions of the implied consent statute, can produce an admissible certificate of analysis.

In *Durant v. City of Suffolk,* 4 Va.App. 445, 448, 358 S.E.2d 732, 734 (1987), the same basic sequence of events occurred as in *Thomas*—the officer arrested Durant without having statutory authority for the arrest, the officer then informed Durant of the implied consent law, and Durant subsequently submitted to a breath test. This Court, relying on *Thomas,* found the results of that test should have been excluded from the

trial. *Id.* at 449, 358 S.E.2d at 734. Therefore, *Durant* simply reapplies the same test explained, *supra,* in *Thomas.*[8]

*Thomas* and *Durant* hold that a suspect cannot legitimately consent to a breath test if he is unlawfully or untimely arrested, the officer informs the suspect of the provisions of the implied consent law, *and* the suspect then consents to provide a breath sample under the mistaken belief that he could be penalized under the implied consent law for refusing to cooperate. *See Bristol v. Commonwealth,* 272 Va. 568, 574–75, 636 S.E.2d 460, 464 (2006) (A "driver's timely arrest triggers the statutory consent requirement, [so] the arrest must be completed before the driver may be *required* to take the test." (emphasis added)).[9] These cases do not address the facts here, however, where the breath test was not obtained pursuant to that law. Here, independent of the implied consent law and without the officer ever telling him about Code § 18.2–268.2, appellant *actually asked* to take the test. Unlike the defendants in *Durant* and *Thomas,* appellant initiated the discussion here and, without being informed that he was presumed "to have consented to have samples" of his breath taken under Code § 18.2–268.2, appellant told the officer that he "wanted to blow" into the Intoxylizer. Unlike the officers in *Durant* and *Thomas,* Officer Weinstein did not use the implied consent statute to prod appellant into taking the breath test. Therefore, the provisions of Code § 18.2–268.2 do not operate to exclude the certificate here.

Other states have considered arguments similar to those raised by appellant in relation to statutes similar to Code

---

**8.** Another important distinction exists between this case and *Durant.* In *Durant,* the Court found the officer did not have probable cause to arrest Durant. 4 Va.App. at 448, 358 S.E.2d at 734. Here, the trial court found the officer had probable cause to arrest appellant (we presume in this opinion, *supra,* only that the officer did not have *statutory* authority to arrest him). That probable cause finding by the trial court is not subject to review here as the question of probable cause is not before us in this appeal. *See supra* footnotes 3 & 4.

**9.** Under Code § 18.2–268.3, a driver unreasonably refusing to submit to a breath test can have his or her driver's license suspended for a year or more.

§ 18.2–268.2. In *People v. Ward*, 307 N.Y. 73, 120 N.E.2d 211 (1954), the police asked, in a " 'gentlemanly manner,' " if Ward would submit to a blood test, and he then agreed to the test without any mention by the police officers of the state's implied consent law.[10]   The Court of Appeals of New York found the state's implied consent law did not apply, and, therefore, the test's results were admissible. *Id.* at 212–14. In *Lunceford v. Northport*, 555 So.2d 246, 247 (Ala.Crim.App. 1988), an officer arrested Lunceford as he sat in a car that was parked in a private parking lot.   The officer then asked him if he was willing to take a breath test, "and he said yes." *Id.* at 248.   The Alabama appellate court agreed with Lunceford that the Alabama implied consent statute applied only when a person drove on public highways, so the statute did not require that Lunceford provide a breath sample to the police.[11] *Id.* However, rather than ruling that the results of the defendant's test should have been excluded, the appellate court remanded the case for the trial court to determine if Lunce-

---

**10.**   At the time, Section 71–a of the New York Vehicle and Traffic Law provided, in part:

"1.   Any person who operates a motor vehicle ... in this state shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic content of his blood provided that such test is administered at the direction of a police officer having reasonable grounds to suspect such person of driving in an intoxicated condition.   If such person refuses to submit to such chemical test the test shall not be given but the commissioner shall revoke his license ... to drive...."

*Ward*, 120 N.E.2d at 212.   The court found that it did not need to address Ward's argument that the officers were required to apprise him of the provisions of the statute before administering the test "where, as here, the defendant voluntarily submitted to the test and there is no claim or hint of coercion." *Id.* at 213.

**11.**   Section 32–5–192(a) of the Alabama Code states, in part:

Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor.

ford's agreement to take the test was voluntary—and, therefore, independent of the provisions of the Alabama implied consent statute. *Id.* at 249–50. The court held that, *if* Lunceford's consent to take the test was involuntary, then he was entitled to a new trial; otherwise, he remained convicted of driving under the influence of alcohol. *Id.* at 250.

In addition, in *State v. Wetherell,* 82 Wash.2d 865, 514 P.2d 1069, 1073 (1973), the Washington appellate court found that defendant Wright [12] had "actually consented" to a breath test, although he was not arrested. The Washington implied consent statute, RCW § 46.20.380(1), was similar to our statute in that a person was "deemed to have given consent" to take the test if he drove on the public highways and if he was arrested for driving while intoxicated. *Id.* at 1071–72. The Washington court ruled that the provisions of the implied consent statute and its warnings were "superfluous" if the driver actually consented to take the test. *Id.* at 1072. As Wright had consented to take the test without recourse to the provisions of the implied consent statute, the court held that the results of his test were admissible. *Id.* at 1073. *See also State v. Seager,* 178 Neb. 51, 131 N.W.2d 676, 677–78 (1964) ("There is nothing in the present statutory conditions relative to implied consent which has the effect of changing the foundation requirements of the statutes for the admission of tests performed pursuant to the consent of the accused.").

While the implied consent law provides an incentive for a driver to submit to a breath test, if an arresting officer does not discuss that law with a driver in order to obtain a breath sample, the provisions of Code § 18.2–268.2 are not implicated. As appellant here voluntarily provided the breath sample for the Intoxilyer test without any recourse to the implied consent law, we find that Code § 18.2–268.2 did not apply here.[13]

---

12. Wright's and Wetherell's appeals were consolidated.

13. The record in this case contains no evidence that the officer ever read the implied consent law to appellant or that appellant had any knowledge of the statute prior to his submission to the breath test.

Therefore, the trial court here correctly denied appellant's motion.

The dissent points to other arguments, not made by appellant, to find that the trial court committed error here, contending that "[t]he mere fact that a breath test is voluntarily taken does not automatically render the results of that test admissible at trial." We do not necessarily disagree.[14] However, the dissent fails to recognize that appellant simply did not argue at trial, and does not argue on appeal, that Code § 18.2–268.9 or any other rule of evidence precluded introduction of the certificate of analysis here. As the issue was not argued at trial or on appeal, consideration of Code § 18.2–268.9 is inappropriate under Rule 5A:18 and Rule 5A:20.

Appellant argued only that Code § 18.2–268.2(A) *itself*, and particularly as interpreted in *Durant* and *Thomas*, precluded introduction of the certificate of analysis because the arrest was unlawful.[15] Appellant in this appeal did not discuss any rules of evidence, but instead argued that the officer never had lawful authority to administer the test, as the issue was raised in *Durant* and *Thomas*. Although perhaps appellant should have argued that Code § 18.2–268.9 precluded introduction of the certificate here, assuming the dissent's analysis is correct, nonetheless he never made this argument at trial or on appeal. Therefore, we do not consider its application here, especially as appellant also does not argue that the ends of justice require consideration of Code § 18.2–268.9. *See* Rule 5A:18; *Singson v. Commonwealth*, 46 Va.App. 724, 749 n. 10, 621 S.E.2d 682, 694 n. 10 (2005).

The dissent also contends that the majority opinion errs, claiming that "the objection made by appellant to the sufficiency of that foundation" preserved any objection to the certifi-

---

**14.** We also do not necessarily agree that the certificate was inadmissible under Code § 18.2–268.9. We simply find that this discussion is precluded by Rules 5A:18 and 5A:20.

**15.** Appellant's position seems to be that *no* test results are admissible if the arrest was unlawful, whether or not the results are otherwise admissible.

cate of analysis under Code § 18.2–268.9. However, again, appellant *never* argued that the certificate was inadmissible under Code § 18.2–268.9. Instead, he argued that the implied consent statute did not apply because the arrest was improper. Therefore, it is not surprising that the trial court based its ruling only on the objection made by appellant. The trial court was never asked to consider the question from the perspective presented by the dissent.

We agree with the dissent that the Commonwealth, as the proponent of the certificate of analysis, was required to respond to appellant's arguments against admission of that evidence. However, the Commonwealth was not required to address every possible objection to the certificate's admission, even arguments that were not presented by appellant. The Commonwealth was required only to answer the specific objections that appellant did make. *See Wright v. Norfolk & W. Ry. Co.*, 245 Va. 160, 170, 427 S.E.2d 724, 729 (1993) ("[A] litigant will not be permitted to invite a trial court to commit error, either through agreeing *or failing to object,* and then be permitted to successfully complain of such error on appeal." (emphasis added)); *cf. Neal v. Commonwealth*, 15 Va.App. 416, 422, 425 S.E.2d 521, 524–25 (1992) (explaining that the specifics of the objection are important to preserving an evidence issue for appeal). Therefore, whether or not the certificate of analysis here failed to meet the requirements of Code § 18.2–268.9 is irrelevant now on appeal. Appellant never made any objections based on that statute, so the Commonwealth was not required to prove that the certificate of analysis met the requirements of Code § 18.2–268.9. Therefore, the provisions of that statute do not affect our analysis here.

## CONCLUSION

We find the officer did not need to resort to the implied consent law to obtain a breath sample because appellant explicitly consented to the breath test without being informed about the implied consent statute. Thus, as the officer did not rely upon Code § 18.2–268.2(A) to obtain the sample, that

statute did not require the exclusion of the certificate of analysis here.

We find the trial court did not err in admitting the certificate into evidence, and, therefore, we affirm appellant's conviction.

*Affirmed.*

HUMPHREYS, J., dissenting.

I dissent from the majority's analysis and its conclusion that by voluntarily taking the breath test, appellant somehow conceded its admissibility in court. I believe such a holding is contrary to both the basic rules of evidence and existing case law. Moreover, I would hold that the trial court erred in admitting the results of appellant's breath test pursuant to the implied consent statute. Thus, I also dissent from the judgment and would reverse the conviction and remand for a new trial if the Commonwealth be so advised.

The majority finds that "the implied consent statute was not used in this case to obtain the breath sample because appellant expressly volunteered to provide the sample before the officer could even mention the provisions of the implied consent statute to him." This statement by the majority is factually misleading and conflates two otherwise distinct legal issues: the voluntariness of appellant's breath test when arrested and the admissibility of the certificate of analysis from appellant's breath test as an exhibit at trial. From the record, it is clear that the trial court based the admission of the certificate on the applicability of the implied consent statute. Yet, in its analysis, the majority simply ignores what was actually presented to the trial court to find another rationale for the certificate's admissibility, and then substitutes this rationale for the one actually advanced at trial. The majority begins with the notion that because appellant "agreed to submit to the Intoxilyzer," the provisions of the implied consent statute are inapplicable. From this flawed premise, the majority then reasons that because the taking of the breath

test was voluntary, the results were *ipso facto* admissible at trial.

In response, I must point out that every submission to a breath test is essentially a voluntary act, whether conducted pursuant to Code § 18.2–268.2(A) or not. Our statutory scheme contemplates that by driving on the highways of the Commonwealth, one has thereby consented to taking a breath or blood test. *See* Code § 18.2–268.2. This consent can only be withdrawn by an affirmative act revoking that consent. The only legal distinction between breath tests conducted pursuant to Code § 18.2–268.2 and those that are not is the *foundation necessary* in order to admit the test results as an exhibit at trial. It seems axiomatic to me that criminal defendants do not make binding decisions regarding the admissibility of evidence at the time of their arrest by virtue of their cooperation with law enforcement officers. Judges make these decisions, and they do so pursuant to the rules of evidence at the time the evidence is tendered to the fact finder. Thus, the mere fact that a breath test is voluntarily taken does not automatically render the results of that test admissible at trial.[16]

The majority is content to look at Code § 18.2–268.2 in a vacuum stating that "[t]his statute does not address *all* instances when a breath test may be taken and includes no language addressing the *admissibility* of the resulting certificates of analysis at trial." (Emphasis in majority opinion). While this may be true in a literal sense, the majority has overlooked one of the most basic principles of appellate review. "[W]hen a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each." *Ainslie v. Inman,* 265 Va. 347, 353, 577 S.E.2d 246, 249 (2003) (citing *Kole v. City of Chesapeake,* 247 Va. 51, 56, 439 S.E.2d

---

16. For example, the results of a preliminary breath test, which are always taken voluntarily, are never admissible at trial as evidence of guilt. Code § 18.2–267(E); *see also Stacy v. Commonwealth,* 22 Va. App. 417, 470 S.E.2d 584 (1996).

405, 408 (1994)). Therefore, we cannot merely examine Code § 18.2–268.2 in isolation, but must consider it in relation to other sections of the Code that concern the admissibility of such evidence.[17]

Before a certificate of analysis from a breath test may be admitted into evidence, the Commonwealth must first lay an adequate foundation for its admissibility. The majority correctly notes that compliance with the implied consent statute is not necessarily a prerequisite for the admission of the results of a breath test. However, the foundation required for admission in other circumstances is far more stringent than that laid by the Commonwealth in this case.

Code § 18.2–268.9 outlines two categories of foundational requirements for the use of breath-test results as evidence in a prosecution for driving under the influence of alcohol or drugs.[18] For *all* cases involving a prosecution for driving under the influence, the statute provides in pertinent part:

> To be *capable of being considered valid as evidence* in a prosecution under §§ 18.2–266 ... chemical analysis of a person's breath shall be performed by an individual possessing a valid license to conduct such tests, with a type of equipment and in accordance with methods approved by the Department of Criminal Justice Services, Division of Forensic Science. The Division shall test the accuracy of the breath-testing equipment at least once every six months. The Division shall establish a training program for all individuals who are to administer the breath tests. Upon a person's successful completion of the training program, the Division may license him to conduct breath-test analyses.

---

17. The General Assembly has expressly noted that it considers Code §§ 18.2–268.2 through 18.2–268.9 as a series of related "steps." *See* Code § 18.2–268.11 ("The *steps* set forth in §§ 18.2–268.2 through 18.2–268.9 relating to taking, handling, identifying, and disposing of blood or breath samples are procedural and not substantive. Substantial compliance shall be sufficient." (emphasis added)).

18. While Code § 19.2–187 deals with the general admissibility of certificates of analyses, Code § 18.2–268.9 specifically addresses the use of breath-test results as evidence.

Such license shall identify the specific types of breath test equipment upon which the individual has successfully completed training. . . .

Code § 18.2–268.9 (emphasis added).

Thus, *no* breath test evidence may be *considered* for admission unless it was conducted by a properly licensed operator on properly approved equipment. The remaining language in Code § 18.2–268.9 states the foundational requirements for the *admissibility* of certificates reporting the analyses of breath tests, but expressly limits those requirements to breath tests administered pursuant to Code § 18.2–268.2 as follows:

Any individual conducting a breath test *under the provisions of § 18.2–268.2* shall issue a certificate which will indicate that the test was conducted in accordance with the Division's specifications, the equipment on which the breath test was conducted has been tested within the past six months and has been found to be accurate, the name of the accused, that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test, the date and time the sample was taken from the accused, the sample's alcohol content, and the name of the person who examined the sample. *This certificate, when attested by the individual conducting the breath test, shall be admissible in any court in any criminal or civil proceeding as evidence of the facts therein stated and of the results of such analysis* . . . .

Code § 18.2–268.9 (emphasis added).

Basically, in order to introduce the results of a breath test in *any* prosecution under Code § 18.2–266, the operator and equipment *must* comply with the first paragraph of Code § 18.2–268.9 as part of the foundation for admissibility of the test results. However, if the implied consent statute is applicable, the only remaining foundational requirements are found in Code § 18.2–268.9 itself, and the certificate of analysis is admissible if the requirements of both the first and second paragraphs of that statute have been satisfied. In essence,

the properly attested certificate by a certified operator using approved equipment, when coupled with the applicability of the implied consent statute, provides the necessary foundation. On the other hand, if the implied consent statute does not apply, as the majority suggests, then the streamlined statutory foundational requirements for admitting the certificate of analysis contained in the second paragraph of Code § 18.2–268.9 are likewise inapplicable. Under those circumstances, the test results would only be admissible following the laying of a proper foundation consistent with both the first paragraph of Code § 18.2–268.9 *and* the additional requirements imposed by the traditional rules of evidence such as those prohibiting hearsay or governing expert witnesses. *See* Charles E. Friend, *The Law of Evidence in Virginia* § 14–5(a), at 573 (6th ed.2003). Since the Commonwealth offered no evidentiary foundation, other than the assertion that the implied consent statute was applicable and the fact that the officer was a "certified Intox operator," the trial court would have erred in admitting the test results even under the analysis of the majority.

In approaching the question presented to us, the majority reasons from the negative and asserts that the trial court did not err in admitting the certificate because "appellant simply did not argue at trial, and does not argue on appeal, that Code § 18.2–268.9 or any other rule of evidence precluded introduction of the certificate of analysis." However, in making this statement, the majority blithely ignores a number of significant facts in the record. First, the Commonwealth offered no alternative basis for the admission of the certificate of analysis other than the applicability of the implied consent law. The Commonwealth laid the foundation for the admission of the certificate based entirely upon the applicability of Code § 18.2–268.2. The Commonwealth established that Officer Weinstein was a certified breathalyzer operator, that he advised appellant of the statutory presumption of sobriety found in Code § 18.2–269(A)(1), and that Weinstein substantially followed all of the procedures required for taking and admitting the results of a breath test pursuant to Code § 18.2–268.2

*et seq* (the implied consent statutes). Thus, it seems obvious from the record that, in context, the exhibit was clearly tendered for admission by the Commonwealth on the basis of compliance with Code § 18.2–268.2.

Second, appellant objected to the admission of the certificate of analysis pursuant to the implied consent statute, arguing that the Commonwealth failed to establish that he had been validly arrested—a prerequisite for the admissibility of test results obtained pursuant to Code § 18.2–268.2(A). *See Bristol v. Commonwealth,* 272 Va. 568, 636 S.E.2d 460 (2006). After hearing lengthy arguments from both the prosecutor and defense counsel that focused exclusively on whether the arrest requirement of the implied consent statute was satisfied, the court stated, "I'm going to overrule the objection, [and] admit the Certificate of Analysis." Furthermore, the trial court expressly stated that, in doing so, it relied on *Easton v. Commonwealth,* No. 2119–04–2, 2005 WL1507103 (Va.Ct.App. Jun.28, 2005), an unpublished opinion of this Court, in making its ruling. In *Easton,* the appellant challenged the admissibility of her certificate of analysis on the grounds that the requirements of the implied consent statute were not satisfied. This Court disagreed and affirmed her conviction because the certificate was admissible *under the implied consent statute.* In admitting the certificate of analysis, the trial court expressly noted that *Easton* was "almost identical" to the issue before it and then stated "Mr. Whitestone [counsel for appellant], you have a court reporter here. You can give the Court of Appeals another opportunity to revisit [sic], but *in my estimation, they have already decided."* (Emphasis added). This statement by the trial court undoubtedly confirms that it admitted the certificate pursuant to the implied consent statute.

The majority excuses any error by the trial court by asserting that appellant did not object specifically on the ground that "Code § 18.2–268.9 or any other rule of evidence precluded introduction of the certificate of analysis." Assuming without agreeing that Roseborough's objection lacked the requisite specificity to put in issue the rationale offered by the

majority, the obvious point that must be made is that he did not have to object on other grounds if the ground upon which he did object had merit. Here, the Commonwealth offered the certificate of analysis into evidence and, in doing so, both proffered a foundation procedurally consistent with the requirements of a breath test taken pursuant to Code § 18.2–268.2 and also specifically argued that the test was administered in compliance with the implied consent statute. Appellant then objected to the admission of the certificate based upon his perceived defect in the foundation for admissibility advanced by the Commonwealth. The trial court, after hearing argument from both counsel which focused exclusively on whether or not the foundational requirements for the admissibility of the certificate of analysis had been met *pursuant to the implied consent statute,* and considering an unpublished decision from this Court which dealt with the very point in issue, admitted the evidence over appellant's objection. In other words, the context of the decision by the trial court to admit the certificate of analysis as an exhibit was framed by the foundation tendered by the Commonwealth, the objection made by appellant to the sufficiency of that foundation, and the arguments of counsel which dealt with both. The rules of court surely require no more of an advocate in order to preserve the point for appeal than was done here. For these reasons, I disagree with the majority and would reach the merits of the issue of the admissibility of the certificate of analysis as argued and decided in the court below.

Virginia's implied consent statute, Code § 18.2–268.2(A), provides:

Any person, whether licensed by Virginia or not, who operates a motor vehicle upon a highway, as defined in § 46.2–100, in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of § 18.2–266, 18.2–266.1, or subsection B of

§ 18.2–272 or of a similar ordinance within three hours of the alleged offense.

Thus, the results of a breath test administered pursuant to Code § 18.2–268.2(A) are admissible against the accused in a trial for driving under the influence, so long as the accused has first been *validly arrested. Durant v. City of Suffolk,* 4 Va.App. 445, 448, 358 S.E.2d 732, 734 (1987). Appellant argues that the statutory requirements for a valid, warrantless arrest were not satisfied in this instance.

Code § 19.2–81 delineates the circumstances under which an officer may arrest a person without a warrant. For misdemeanors, the general rule is that an officer may not make a warrantless arrest of a person, unless the crime was committed in the officer's presence. *Galliher v. Commonwealth,* 161 Va. 1014, 1021, 170 S.E. 734, 736 (1933). "An offense is committed within the presence of an officer, within the meaning of this rule, when he has direct personal knowledge, through his sight, hearing, or other senses that it is then and there being committed." *Id.*

The offense for which appellant was arrested is a misdemeanor, and was not committed "within the presence" of the officer. The officer arrived at the scene approximately thirty minutes after the accident. He did not observe appellant drive or operate the vehicle in any way. The officer had no "direct personal knowledge" that an offense was *"then and there* being committed." *Id.* (emphasis added). Therefore, appellant's arrest was invalid unless an exception to the presence requirement of Code § 19.2–81 applied.

"[T]he legislature set forth certain exceptions to the misdemeanor presence rule in Code § 19.2–81, indicating that a deviation from the presence requirement is authorized only in these limited circumstances." *Penn v. Commonwealth,* 13 Va.App. 399, 404, 412 S.E.2d 189, 192 (1991), *aff'd,* 244 Va. 218, 420 S.E.2d 713 (1992). The exception to the presence requirement of Code § 19.2–81 that concerns the issue before us involves motor vehicle accidents occurring on "any of the *highways ... of the Commonwealth."* (Emphasis added).

Pursuant to the statute, "such officer may, within three hours of the occurrence of any *such accident* involving a motor vehicle, arrest without a warrant at any location any person whom the officer has probable cause to suspect of driving or operating such motor vehicle while intoxicated in violation of § 18.2–266. . . ." Code § 19.2–81 (emphasis added). Appellant argues that this exception does not apply because the gated roadways of the Watergate at Landmark apartment complex do not constitute a "highway of the Commonwealth" for purposes of Code § 19.2–81. I agree.[19]

This Court has not previously had occasion to construe the phrase "highways of the Commonwealth" in the context of Code § 19.2–81. "Statutory interpretation presents a pure question of law and is accordingly subject to *de novo* review. . . ." *Washington v. Commonwealth*, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006) (citing *Ainslie*, 265 Va. at 352, 577 S.E.2d at 248). "[W]e [the Court] must determine the General Assembly's intent from the words contained in a statute." *Id.* (citing *Commonwealth v. Diaz*, 266 Va. 260, 264–65, 585 S.E.2d 552, 554 (2003)). "[W]hen a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each." *Ainslie*, 265 Va. at 353, 577 S.E.2d at 249 (citing *Kole*, 247 Va. at 56, 439 S.E.2d at 408).

Code § 19.2–81 provides no express definition of the word "highway." Consequently, we must look to the plain, commonly understood meaning of the word in order to ascertain the intent of the legislature. *See Hulcher v. Commonwealth*, 39 Va.App. 601, 605, 575 S.E.2d 579, 581 (2003). Traditionally, a "highway" is considered to be "a road or way on land . . .

---

19. The Commonwealth argues that Code § 19.2–81's "at any location" language applies to the location of the accident. That, however, is a misreading of the statute. The words, "at any location" apply only to where the arrest may occur, not the location of the accident. As appellant correctly notes, the words "such accident" refer the reader to prior language in the statute, which indicate that the "accident" exception to the presence requirement is limited to those that occur "on any of the highways . . . of the Commonwealth." Code § 19.2–81.

that is open to public use as a matter of right whether or not a thoroughfare." *Webster's Third New International Dictionary* 1069 (1961).

Appellant argues that the definition of "highway" contained in Code § 46.2–100 should be applied to the warrantless arrest requirements of Code § 19.2–81. However, the introductory paragraph of Code § 46.2–100 limits the application of that definition stating: "The following words and phrases when used in this title, *for the purpose of this title*, have the meanings respectively ascribed to them in this section...." (Emphasis added). Put simply, the definition of highway used in Code § 46.2–100 is not, by itself, controlling on the issue of whether or not an officer can make a warrantless arrest of a person pursuant to Code § 19.2–81. Nevertheless, this definition, though not controlling, is helpful to our analysis as it is illustrative of how "highway" has been interpreted by the courts in other circumstances.

The Supreme Court of Virginia has consistently held that a highway is not limited to public roads. *See Furman v. Call*, 234 Va. 437, 439–40, 362 S.E.2d 709, 711 (1987) (holding that where the evidence was undisputed that the roads around and in a condominium complex were open to the public twenty-four hours a day, seven days a week and the public had never been denied access by guards or gates, the area was a "highway"). "[T]he test for determining whether a way is a 'highway' depends upon the degree to which the way is open to public use for vehicular traffic." *Kay Mgmt. Co. v. Creason*, 220 Va. 820, 831–32, 263 S.E.2d 394, 401 (1980). "The public's free and unrestricted use of a roadway supports the inference that a road is a highway. Evidence that the roadway's users must obtain either explicit or implicit permission to use the road may refute this inference." *Campbell v. Commonwealth*, 39 Va.App. 180, 190, 571 S.E.2d 906, 912 (2002) (citing *Kay Mgmt. Co.*, 220 Va. at 832, 263 S.E.2d at 402). It follows that if a roadway were sufficiently restricted so as to prevent its free use by the public for vehicular traffic, the roadway would not constitute a highway for purposes of Code § 46.2–100. *See Caplan v. Bogard*, 264 Va. 219, 563 S.E.2d 719 (2002) (holding

that the private parking lot of a restaurant, including its entrance, was not a "highway" pursuant to Code § 46.2–100); *see also Roberts v. Commonwealth,* 28 Va.App. 401, 504 S.E.2d 890 (1998) (holding that a convenience store parking lot, which was privately owned and which was only accessible to the public in connection with the owner's business invitation, was not a "highway" under Code § 46.2–100).

In drafting Code § 19.2–81, the General Assembly was explicit about the type of road to which it was referring with respect to the "accident" exception to the misdemeanor presence requirement. While the definition in Code § 46.2–100 applies only to "highways," Code § 19.2–81 uses the language "highways . . . of the Commonwealth." By adding the qualifying language, "of the Commonwealth," the General Assembly clearly intended to precisely limit the instances to which this exception applies. Thus, if a road does not qualify as a highway under Code § 46.2–100, it certainly would not qualify as a highway "of the Commonwealth" under Code § 19.2–81.

Clearly, the use of the roadways within the Watergate at Landmark was restricted in such a way as to exclude the general public. The evidence at trial established that the accident in question occurred exclusively within the confines of the apartment complex. Its roadways were not "open to public use for vehicular travel," *Kay Mgmt. Co.,* 220 Va. at 831–32, 263 S.E.2d at 401, nor could they be considered a "road or way on land . . . that is open to public use as a matter of right," *Webster's, supra,* at 1069. A security gate controlled access to each of the five entrances to the apartment complex. To gain entry, a person would have to obtain explicit permission from a security guard or use a remote transponder. Additionally, a security guard from the apartment complex testified that the area in question was not open to the public. Because of their restricted nature, the roadways of the Watermark at Landmark do not qualify as a highway under Code § 46.2–100, and, thus, cannot be "highways of the Commonwealth" for the purposes of Code § 19.2–81.

Because the accident did not occur on a "highway of the Commonwealth," the statutory exception to Code § 19.2–81 did not apply, making appellant's warrantless arrest for driving while intoxicated invalid, as it did not occur in the presence of the arresting officer.[20] Therefore, the certificate of analysis of appellant's breath test was not administered pursuant to Virginia's implied consent statute, and the trial court erred in admitting it into evidence on that basis. For the foregoing reasons, I would reverse appellant's conviction and remand for a new trial should the Commonwealth be so advised.

---

**20.** The Commonwealth does not claim that any of the other statutory exceptions to the presence requirement apply.